Jackson
v.
Livingston.

---

JACKSON, ex dem. Garnsey and others, *vs.* LIVINGSTON.

*Parol evidence* may be given of the existence, contents and surrender or can-
cellation of a *power of attorney*, authorizing the sale and *conveyance of lands*
under which a *sale* has in fact been had; and such evidence may consist
of the *admissions* of the *constituent*.

The introduction of such evidence does not violate the rule of law that a *fee*
cannot be divested by *parol*: the title passed by the *written instruments*
the *power* and the *deed* executed in pursuance thereof, and the non-pro-
duction of a deed or written instrument being satisfactorily accounted for,
evidence of the existence and contents of such paper is always amissible.

A *plaintiff* in ejectment is not bound to call the *grantor* of the *defendant* as a
*witness*, to shew the existence of a deed in the possession of such grantor;
*notice* to the defendant to whom the title of such grantor has passed to
produce the deed *at the trial* is sufficient, and will authorize parol proof of
the contents of the deed.

Where a deed granted 600 acres of land *to be surveyed* or *taken off* of a large
tract, and by the terms of an instrument referred to in the deed, the tract
was to be divided into lots of 100 acres each, and an *election* of lots was
given to the grantees, which they subsequently made, *it was held*, that
though by the deed the grantees became *tenants in common* with the own-
ers of the tract, the *election* followed up by possession operated as a *parol
partition*.

THIS was an action of *ejectment*, tried at the Chenango cir-
cuit in December, 1828, before the Hon. SAMUEL NELSON,
then one of the circuit judges.

The plaintiff claimed to recover a certain lot known as No.
6, in a tract of 15,360 acres of land granted to Malachi Treat
and William W. Morris, by letters patent, bearing date the
13th August, 1787, under a deed of the patentees, by *Charles
Felix Rue De Boulogna*, their attorney, to *Marie Jeane Dohet*,
widow of *Herbet D'Autremont*, and *Antoine Bartholemy Louis
Le Fevre* and *Marie Genevieve Dohet*, his wife, bearing date the

12th September, 1792, acknowledged by Boulogne the succeeding day before one of the associate judges of the supreme court of the United states, and for the consideration of 5400 livres tournois, granting in fee the tract or full quantity of 600 acres of land, part and parcel of the tract of 15,360 acres, *to be surveyed* or taken off the aforesaid tract according to, and in pursuance of certain articles, *recited* in the deed as having been entered into between Boulogne and the grantees, and as being annexed thereto. The deed *also recited* a power of attorney from the patentees to Boulogne as bearing date the 16th June, 1791, authorizing Boulogne to bargain and sell the whole or any part of the tract of 15,360 acres, limiting the price to one Spanish milled dollar per acre, including a commission of eight *per centum* on sales, and further authorizing him to grant and convey the premises, and to make a good and sufficient title for the same to the purchasers. The *articles* referred to in the deed, and which were attached thereto and signed by the parties, bear date at Paris the 27th March, 1792, and specify the terms of the contract between the parties, and among other things, that Boulogne should give to the purchasers peaceable possession of six hundred acres of land, to be taken by them according to the date of the several articles of agreement of all the purchasers, and at their own choice ; the 600 acres to be laid out in 100 acre lots. From an endorsement on these articles it would seem that the original power of attorney was deposited with a Mons. Gabion, a notary in Paris. Attached to the deed also was a *copy* of the *power of attorney* from the patentees to Boulogne, conferring the authority recited in the deed. The existence, contents and surrender or cancellation of the power of attorney were proved by *parol* testimony by the admission of *Morris*, one of the patentees, made in 1801. The subscribing witnesses to the power were dead. *Treat*, the other patentee, died in 1795, and Boulogne also was dead. Notice to produce the power was given to the defendant. This species of proof was received by the judge, although objected to by the defendants' counsel. It also appeared in evidence that Morris had admitted that he had received of Boulogne 6000 crowns upon the sale of the tract, but whether for lands sold by Boulogne, as attorney, or for lands sold to him by the

NEW-YORK,
May, 1831.

Jackson
v.
Livingston.

patentees, as from some of the evidence it would seem that he had himself become a purchaser of 6000 acres, if not more, of the tract, did not appear.   In 1793, Mad. D'Autremont and Mons. Le Fevre and wife moved on the tract, accompanied by Boulogne, and a log house was built for them which they inhabited together.   In 1794 the tract granted to the patentees was surveyed, and Le Fevre, with the approbation of Mad. D'Autremont, made choice of three lots, designated as lots Nos. 4, 5 and 6, the last of which is the lot in dispute ;   Mad. D'Autremont also selected three lots for herself.   Le Fevre put up crotchets and trammels of wood on his lots, made a clearing and cultivated a garden ;   the lots selected by him have ever since been called the *Le Fevre lots.*   In May 1802, Le Fevre conveyed the three lots selected by him to Garnsey, one of the lessors of the plaintiff, and in the same year one Huntley entered into possession of lot No. 6, the premises in question, as the tenant of Garnsey, cleared land, built a barn and resided on the lot for a number of years.   As early as 1809 or 1811, lot No. 6 was in the possession of a tenant of the *defendant,* and from that time until 1828 it was alternately in the possession of *Garnsey,* the grantee of Le Fevre, and of *Livingston,* the defendant in this cause by their tenants.   In February, 1828, this suit was commenced against the defendant, who had shortly before obtained possession of the lot by a recovery in an action of ejectment.   Evidence was given that lots No. 4 and 5 had been possessed by the tenants of Garnsey, and no proof was offered that they had been claimed by any person under an adverse title.

The plaintiff having rested, the defendant gave evidence of a partition between the heirs of *Treat,* one of the patentees, and *Morris,* the other patentee, made in July, 1800 ;   he also produced a deed without warranty of lot No. 6, from *Morris* to Mr. *Cutting,* bearing date the 3d June, 1803, and a conveyance from *Cutting* to himself dated in August, 1803, and made proof of the possessions, which from time to time had been held under him.   The evidence being closed, the jury, under the charge of the judge, found a verdict for the plaintiff.   The defendant moved for a new trial.

*J. Clapp,* for defendant.

*H. Van Der Lyn,* for plaintiff.

*By the Court,* SAVAGE, Ch. J.   The principal question in this case is, whether the *power of attorney* from Treat and Morris to Boulogne was sufficiently proved.   It was not produced, nor was any witness introduced who had ever seen it ; but its existence, contents and destruction were shewn by the admissions of Morris, under whom the defendant claims.   Hartshorne and Brush, two of the witnesses, were interested in the patent, having married neices of Treat, one of the patentees ; to both of them Morris admitted that a power of attorney had been given to Boulogne ; to Hartshorne he admitted that a *power* had been given, that it contained authority to *sell* and *convey*, and that it was *given up* to be cancelled when Boulogne purchased the whole patent.   In corroboration of the fact of such purchase having been made, Hartshorne states that he saw the bond and mortgage executed by Boulogne, and had them in his possession for some time as the agent for the administrator of Treat.   The plaintiff produced a deed from Boulogne for six hundred acres to Le Fevre and D'Autremont.   If Boulogne had authority from the patentees to execute that deed, then the grantees acquired title to so much land in that patent, unless the deed was void for the insufficiency of the description of the premises.

It is objected by the defendant that the plaintiff relies upon *parol* declarations of Morris, and insists that no man can be divested of his title to real estate by parol.   That proposition is not denied : For instance, in this case title is shewn in Treat and Morris ; the plaintiff cannot shew title from them to the lessors, by proving that Treat and Morris admitted that the lessors were the owners.   But I can see no reason why any fact, which can legally be proved by *parol*, may not be proved by the admissions of a party. There may be exceptions.   There are cases where particular witnesses must be produced or their absence accounted for, as in the case of the subscribing witnesses to a deed. It cannot be denied that in this case it would have been competent for the plaintiff to have produced the witnesses to the power of attorney, and proved its existence and contents, after having shewn that it was lost or destroyed ; and such loss or destruction might have been proved by the oath of the party plaintiff himself, if the fact had been

NEW-YORK,
May, 1831.

Jackson
v.
Livingston.

within his knowledge. A deed is produced purporting to have been executed by the attorney of the patentees—no power of attorney is produced, but the existence and the absence of the power are shewn ; this is done by *parol*, and in admitting such evidence, the rule that a *fee* cannot be divested by parol, is not violated. The evidence shews a sufficient written authority, and that is permitted to be shewn by parol, because it is the best evidence in the power of the party to prove the written instrument. If Hartshorne or Brush had seen the power of attorney surrendered up to Morris, or cancelled by Boulogne, it will not be pretended that such evidence would not have been competent and sufficient to prove the fact. Could they also have stated the contents of the power, their testimony by parol must have been held satisfactory ; yet all this is parol testimony as much as if the existence, the destruction and the contents of the power rested upon the admissions of Morris. The objection that this is proving title by parol is not well founded ; the title passed by the written instruments, and the parol evidence proves that there was sufficient authority by writing to authorize the execution of the deed, which was produced. I have not gone into an examination of the authorities cited on either side of this point ; they are all good law, but there is nothing in any of them, nor any other that I am aware of, which prohibits the introduction of parol testimony to prove the existence and the contents of a deed, or written instrument of any kind, where its non-production is satisfactorily accounted for. It was impossible in this case to produce the subscribing witnesses to the power of attorney ; they had long been dead ; their handwriting could not be proved, because the power of attorney was not produced ; and the power was not produced, because it was cancelled or given up. If cancelled, there was a destruction of it ; if given up, but not destroyed, it probably remained in the possession of the defendant or of Morris. The defendant had notice to produce it, and therefore cannot complain of its non-production if he has it ; if it is in Morris' possession, it is urged the plaintiff should have subpœnaed him, or at least have caused search to be made among his papers. Whether Morris might have been a witness for the plaintiff, seems to me not necessary to

enquire ; it is certain that he could not have been compelled to testify, and the plaintiff was not bound to call him.    There can be no doubt that the declarations of Morris while he owned the title, which the defendant now claims under him, are equally good evidence in this case, as the declarations of the defendant himself to the like effect would have been.    The plaintiff therefore was no more bound to call him, than he was to call the defendant as a witness ; and as Morris would have been under no obligation to furnish evidence for the plaintiff, the latter was not obliged to call for that paper otherwise than in manner he did, by a notice to the party in interest.    Nor was the plaintiff bound to shew that search had been made for the power of attorney at *Paris*, although from the memorandum on the articles of sale it would seem that the power had been deposited there with a *notary*, because from the admissions of *Morris*, made after Boulogne's return to this country, it appeared that the power had been cancelled or surrendered.    It seems to me, therefore that the plaintiff has done all, which, under the circumstances of the case, he was bound to do, and has produced the best evidence which the circumstances permit, to prove that Treat and Morris executed a power of attorney to Boulogne, authorizing him to sell and convey the patent, or any part of it.    The deed executed by Boulogne was produced regularly acknowledged, and is therefore legally proved.

The deed from Boulogne contained no description of the premises in question, but it conveyed to the grantees the quantity of land contained in it, six hundred acres ; a *location* was subsequently made by the acts of the parties.    The deed made the grantees tenants in common with the patentees ; and the proceedings locating the right of the grantees operated as a *parol partition*.    In *Jackson* v. *Harder*, 4 Johns. R. 212, this court said that a parol partition carried into effect by possessions taken according to it, will be sufficient to sever the possessions as between tenants in common ; and in *Jackson* v. *Vosburgh*, 9 Johns. R. 276, they say : " There is no doubt but that were the title is admitted to have been in common, a parol partition followed up by possession will be valid, and sufficient to sever the possession."    Here the title is not now

NEW-YORK,
May, 1831.

Jackson
v.
Livingston.

admitted, but I consider it sufficiently proved, and it was admitted at the time the partition took place, by a person who has been shewn to have had sufficient authority, and who it is proved paid to the patentee 6000 crowns, upon the sale of the tract.

From the testimony respecting the possession it appears that Le Fevre did what he thought necessary to take possession of the lots selected by him; and that a tenant of *Garnsey* was in possession when *Livingston* purchased the lot. Since 1809 the possession has been held sometimes by the plaintiff, and sometimes by the defendant. The rights of the parties are, however, not controlled by *possession*. The main questions in controversy are, whether the plaintiff's deed was executed by a person having a lawful authority to convey? whether legal evidence of that authority has been reduced? and whether the premises have been designated by the acts of the parties? On these questions I think the plaintiff must succeed.

New trial denied.*

*See *Jackson* v. *Lawson*, 15 Johns. R. 539, and *Saltern* v. *Melhuish*, Ambler, 247