## The Town of Reading

*v.*

## Aaron Wedder.

1. Corporate subscription *in aid of railroad—change in name of company does not invalidate.* Where a subscription of $50,000 was regularly voted and made to the Chicago and Plainfield Railroad Company, and the bonds delivered to the Chicago, Pekin and Southwestern Railroad Company; and it appeared that, by an amendment of its charter, the name of the first mentioned company was changed to the latter name, its former rights confirmed, new ones conferred, and the company authorized to extend its road to Pekin: *Held,* on bill in chancery to enjoin the payment of interest on the bonds delivered in payment of the subscription, that, as the amendment changing the name of the company to which the subscription was made was not a fundamental change, the general purpose and direction of the road being the same, the stockholders and officers remaining the same, and the amendment having been accepted, the delivery of the bonds to the company under its new name was proper, and the bill was properly dismissed.

2. Same—*change of route—whether road will pass through town subscribing.* Where a town was authorized to subscribe to the capital stock of a railroad company upon condition that it should pass through such town, and voted such subscription to a company whose charter was subsequently amended, changing the name of the company, and required the road to run from one county to another, without fixing any definite points, and the bonds were issued and made payable to the company by its new name, it was contended that the company could not construct its road through the town so subscribing: *Held,* as the court could see, by reference to a

map of the State, that the road could be built so as to run through the township, the objection that the town was not authorized to make the subscription was not well taken.

Appeal from the Circuit Court of Livingston county; the Hon. Charles H. Wood, Judge, presiding.

Messrs. Clark, Kettelle & Baker, for the appellant.

Mr. L. E. Payson, for the appellee.

Mr. Justice Walker delivered the opinion of the Court:

This was a bill in chancery to enjoin the county treasurer from paying out money in his hands which had been collected for interest on $50,000 of bonds issued by the township of Reading and delivered to the Chicago, Pekin and Southwestern Railroad Company for that amount of their capital stock.

It appears that an election was called; a vote was had, resulting in a majority in favor of subscription for $50,000 of the stock of the company, to be paid for in the corporate bonds of the town; the amount was regularly subscribed; the certificate of stock delivered to the town and the bonds issued to the company.

The bill is against the treasurer and the "unknown holders of $50,000 of bonds issued by the late supervisor of said town, J. S. R. Overholt."

It is urged that the conditions upon which the bonds were issued had not been performed by the company; that the subscription was voted to the Chicago and Plainfield Railroad Company, and delivered to the Chicago, Pekin and Southwestern Railroad Company.

Upon an examination of the various enactments in reference to this company, it appears that the general assembly, at its session of 1859, incorporated the first named road, giving it the usual power to construct and operate a railroad between the points named. Afterwards, at the session of 1867, an act

6—66th Ill.

was adopted to amend the charter. At the session of 1869, there was an act adopted further amending the charter. It changed the name of the road to that of "The Chicago, Plainfield and Pekin Railroad Company," and confirms their former rights, confers new ones, and authorizes the company to extend the road to the city of Pekin.

This last act declares that all subscriptions and donations to the road are legalized, and declares all elections held to vote subscriptions to the road valid and binding. There was another act adopted at this last session, changing the name of the company to that of "The Chicago, Pekin and South-western Railroad Company."

The act of February 25, 1867 (Private Laws, vol. 3, p. 786), amends the charter of the Chicago and Plainfield Railroad Company, as we have seen, and authorizes the company to extend their road from a point on the south line of Kendall county into the county of Peoria; and to this road, with its charter thus amended, the vote to subscribe and issue the bonds was taken.

The law authorizing the vote was the act of March 6, 1867; and authorized the counties of Woodford, LaSalle and Livingston, and the townships, cities, incorporated towns and corporations in those counties, to become subscribers to the capital stock of any railroad then, or that might thereafter become, incorporated in this State.

It is urged that the town of Reading had no power to subscribe to this road, because, under the charter as amended, it could not, without deviating from the route specified in the charter, build their road into or through the township of Reading. The charter authorized the company, without designating any definite points, to run from the south line of Kendall county southwesterly into Peoria county. Looking at a map of the State, we see that a straight line from the southeast corner of Kendall county to a point not far distant from the city of Peoria would pass through the town of Reading. So that we can see that, without deflecting from a straight

line, it would be entirely practicable to construct their road through the town of Reading.

It, then, fails to appear that this road was so situated that this township could not, under the law, vote to subscribe for its stock. In this, we fail to see any objection to the vote or subscription.

But it is urged that the vote was to take stock in the Chicago and Plainfield Railroad Company, whilst the bonds were issued to the Chicago, Pekin and Southwestern Railroad Company. We have seen that the act of 1869 amended the charter and changed the name of this road. It was not a fundamental change. On the contrary, it was the same company with a different name, with the right to change its location so as to run to Pekin, at most but three or four miles from the southeast corner of Peoria county. The general purpose and direction of the road were the same; the stockholders, directors and officers the same, and we may safely infer that the amendments to the charter were accepted, as the bonds seem to have been made payable to the company by that name; nor have counsel for appellant pointed out in what manner the company as now organized differs in any particular, beyond slight amendments, from the company as at first organized. The mere change of names does not and can not change things or their properties; nor does the change of the name of a thing imply any such change of properties.

A careful examination of all the points urged against the decree in this case, fails to show that it was erroneous, and it must be affirmed.

*Decree affirmed.*