ZACK B. SMITH *et al.*, Appellees, *vs.* EDITH E. BURT, individually and as Executrix, Appellant.

*Opinion filed Sept. 19, 1944—Rehearing denied Nov. 20, 1944.*

CHARLES W. KURTZ, and EVA L. MINOR, both of Kankakee, for appellant.

ARTHUR W. DESELM, and WALTER C. SCHNEIDER, both of Kankakee, for appellees.

Mr. JUSTICE SMITH delivered the opinion of the court:

This is an appeal from a decree of the circuit court ·of Kankakee county. By the decree the court construed certain provisions of the last will and testament of Judge Luther B. Bratton, deceased. Judge Bratton, at the time of his death, was one of the judges of the twelfth judicial circuit. Prior to his election to that office, he had practiced law for many years. In 1935, he executed his last will and testament. He died in April, 1943. His will was duly admitted to probate by the county court of Kan-

kakee county. Appellant, Edith E. Burt, was appointed executrix and is now acting as such. At the time of his death he was the owner of several hundred acres of farm lands. He left surviving two brothers, three sisters and certain nieces and nephews and grandnieces and grand-nephews. Appellee Zack B. Smith was a nephew, and appellant, Edith E. Burt, a niece, of deceased.

By various paragraphs of his will, other than paragraphs 9 and 10, he specifically devised to the several devisees therein named, different tracts of land, describing each tract by accurate legal description. The only provisions of his will here involved are paragraphs 9 and 10. These paragraphs read as follows:

"Ninth: I give and devise to my nephew, Zack B. Smith, eighty (80) acres out of what is known as the Luther B. Bratton Station Street Farm in Section 3 Township Thirty (30) North, Range Fourteen (14) West of the Third Principal Meridian in Kankakee County, Illinois, including that part where the buildings are located, to have and to hold for and during the term of his natural life and at his death to descend to his wife, Edna Smith, for and during her natural life, and at the death of said Zack B. Smith or said Edna Smith, in the event that she survive him, the same to descend to my two grand-nephews, Robert Lee Smith and Luther Ray Smith, share and share alike.

"Tenth: I give and devise to my niece Edith E. Burt, the undivided One Hundred Forty (140) acres more or less of what is known as the Luther B. Bratton Station Street Farm in Section Three (3) Township Thirty (30) North, Range Fourteen (14) West of the Third Principal Meridian in Kankakee County, Illinois."

In these two paragraphs of the will the land was correctly described, except it was erroneously located in section 3, township 30 north, range fourteen (14) west of the *third* principal meridian. The parties are agreed that he owned no land in section 3, township thirty (30) north, range fourteen (14) west of the *third* principal meridian. He did own the farm here in controversy, which was commonly known, and referred to in the will, as the Luther B. Bratton Station Street Farm. It was located in section 3,

township thirty (30) north, range fourteen (14) west of the *second* principal meridian. They further agree that section 3, township thirty (30) north, range fourteen (14) west of the third principal meridian would not be in Kankakee county. It being conclusively established and not controverted that the farm owned by him, and which he evidently intended to devise by those paragraphs of his will, was commonly known as the Luther B. Bratton Station Street Farm, in section 3, township thirty (30) north, range fourteen (14) west of the *second* principal meridian, it is obvious that he erroneously described the property as located in range fourteen (14) west of the "Third" principal Meridian when he intended to say west of the "second" principal meridian, which was the correct description. In view of this error the words "of the Third Principal Meridian" may be lawfully disregarded and stricken out. Striking out those words, the description will read "The Luther B. Bratton⁻ Station Street Farm in Section 3, Township Thirty (30) North, Range Fourteen (14) West, in Kankakee County, Illinois." The courts will take judicial notice that there is only one section 3 in township 30 north, range 14, in Kankakee county, which would be in range 14, west of the second principal meridian. They will also take judicial notice that township 30 north, range 14 west of the second principal meridian is in Kankakee county and that township 30 north, range 14 west of the *third* principal meridian, is not. (*Dickerson* v. *Hendryx*, 88 Ill. 66; *Town of Reading* v. *Wedder*, 66 Ill. 80.) This is a good description from which the property devised can be definitely located. When extrinsic evidence discloses latent ambiguities in a will, the testator's intention may be determined by reading the will in the light of circumstances existing at the time of its execution. While the testator's express intent may not be varied, nor words of description be added, a part of the description, shown by parol to be false, may be stricken, and the will read as if originally

composed only of the remaining language. If this remainder is sufficient to identify with certainty the land which the testator is shown by parol to have owned, the property thus identified will pass. *Koelmel v. Kaelin,* 374 Ill. 204.

The farm here involved is located approximately four miles west of the city of Kankakee. State hard road route No. 17 extends along the entire north side of the farm. Route 17 is an extension of Station street in the city of Kankakee. Hence, its designation as "Station Street Farm." The farm consists of the northwest quarter (¼) and the north half (½) of the southwest quarter (¼) of section 3. The northwest quarter (¼) of section 3 is fractional. It contains a total of 134.87 acres. On the north line it is 160.96 rods long east and west, and on the west line it is 136.80 rods wide, north and south. The buildings, consisting of a dwelling, barn, crib, hog houses and other farm buildings, are all located at a point which is from 150 to 300 feet south of the north line. All the buildings, except a hog house and two or three feet of the west end of the barn, are located east of the quarter-section line, extending north and south through the center of the northwest quarter of the section. The north half of the southwest quarter (¼) of section 3 contains 80 acres.

At the time the will was executed, and at the time of the testator's death, appellant, Edith E. Burt, owned a farm lying across route 17, north of, and for a distance of thirty rods, adjoining the farm in question, on the north. The southwest corner of her farm is located thirty rods west of the northeast corner of the farm of testator, both corners being on the north line of section 3. She acquired this farm from him by deed a short time before his will was executed in 1935. She resided on her farm, in a dwelling located on the north side of the hard road, about forty rods east of the northeast corner of testator's farm here involved. Appellee Zack B. Smith was a tenant on

testator's farm at the time the will was drawn, and at the time of his death. He and the deceased owned certain personal property located and used on the farm jointly. By the fifth paragraph of the will, Judge Bratton bequeathed to Zack B. Smith all his interest in this personal property.

This suit was filed by Zack B. Smith and Edna Smith, his wife, and Robert Lee Smith and Luther Ray Smith, his sons, they being the devisees named in paragraph 9 of the will. Edith E. Burt, the devisee named in paragraph 10, was named as defendant, both individually and as executrix. Plaintiffs asked the court to construe paragraph 9 of the will. By their amended complaint they alleged said paragraph should be construed to give to Zack B. Smith and Edna Smith, or to the survivor, a life estate, with remainder over to Robert Lee Smith and Luther Ray Smith, in and to the north 80 acres of the northwest quarter ($\frac{1}{4}$) of section 3. This description would include the buildings. They asked the court to so construe paragraph 9, and for general relief.

Appellant, Edith E. Burt, individually and as executrix, filed an answer to the amended complaint. Edith E. Burt, individually, also filed an amended counterclaim, designated as a "cross-complaint." In this counterclaim she alleged that paragraph 9 should be construed as giving to the devisees named in that paragraph, eighty (80) acres described as beginning at the northwest corner of section 3, running thence east one hundred (100) rods, thence south one hundred twenty-eight (128) rods, thence west to the west line of the section, thence north on said west line one hundred (100) rods to the northwest corner thereof, the place of beginning. This description would also include the buildings. She further alleged, in the alternative, that if the will should not be so construed, then paragraph 9 should be construed as devising to the devisees named in that paragraph, 80/215 of the whole 215 acres, and para-

graph 10, as devising the balance of 135/215 to appellant, as tenants in common. The prayer of the counterclaim was also in the alternative. She asked that in case the court found the land was devised to the devisees named in paragraphs 9 and 10, as tenants in common, the court order partition in accordance with their respective interests. The cause was tried upon the issues joined upon the amended complaint and the answer to such complaint and on the amended counterclaim and the answer thereto.

After hearing evidence, the court reached the conclusion that appellees, by paragraph 9 of the will, were entitled to select 80 acres of their own choice out of the 215-acre farm, including the land on which the buildings were located. It ordered and directed appellees to amend their complaint so as to show that they had selected and chosen 80 acres, extending across the north side of the farm, which included the buildings. In accordance with this order the complaint was so amended. The court then decreed that appellees were entitled to the north 80 acres, so selected. The court further found that appellant was entitled to a way of necessity sixteen and one-half (16½) feet in width along the east line of said 80-acre tract. He further directed that she establish, maintain and keep properly closed, substantial and hog-tight gates at both the north and south ends of such right of way. It was further ordered that all the costs in the case, including $500 allowed to the attorneys on each side of the case, be taxed as costs against Judge Bratton's estate.

In this opinion the four devisees named in paragraph 9 of the will will hereafter be referred to as appellees. Appellant, Edith E. Burt, individually, as distinguished from Edith E. Burt, executrix, will be referred to as appellant, unless otherwise indicated.

A copy of the government survey and plat of section 3 was admitted in evidence. That survey shows the dimensions and area of the northwest quarter (¼), as already

indicated. The quarter section was divided by the government survey into lots 1 and 2. Lot 1 consists of the south 80.37 acres of the fractional quarter section. Lot 2 consists of the north 54.50 acres. It is, therefore, apparent that no 80-acre tract, which would include the buildings, can be described or located from the government survey and plat. The buildings, as already observed, are all located near the center, east and west, and near the north line of lot 2, which is also the north line of the quarter section. Any 80-acre tract which would include the buildings, would necessarily have to include a part of both lots 1 and 2 of the northwest quarter, as platted by the government survey. The 80 acres devised to appellees could not be located from the government survey, either by lot numbers or by any established corners, boundaries or measurements appearing on the survey and plat.

Just when the application of the so-called doctrine of the right of selection originated the record does not show. There was nothing in the pleadings of appellees until after the complaint was amended by the order of the court, after the cause was decided, claiming the right of selection. By appellees' amended complaint and the answer thereto, on which the case was tried, the sole issue was appellees' contention that paragraph 9 of the will should be construed as devising the north 80 acres of the northwest quarter to them. This was claimed as the result of a construction of the language used and not by right of selection.

The issues formed by the amended counterclaim and the answer thereto were whether, by paragraph 9, the testator devised to appellees a rectangular 80-acre tract out of the northwest corner of the quarter section, extending far enough east to include the buildings, or, in the alternative, whether by paragraphs 9 and 10 of the will, construed together, appellees were devised an undivided 80/215 interest in the 215 acre farm, and appellant the remaining approximately 135/215 interest, as tenants in common.

These were the only issues raised by the pleadings. Under the general prayer for relief in both the amended complaint and in the amended counterclaim, notwithstanding these issues framed by the pleadings, the court had the right to construe the paragraphs of the will involved, and grant such relief as might be proper to either or both of the parties.

The record shows that the cause was heard on October 14, 1943. It was decided on December 22, 1943. At that time the court directed appellees to amend their complaint so as to show that they had "elected and chosen" the north 80 acres of the northwest quarter, as the portion thereof selected by them. The complaint was so amended in accordance with the directions of the court. This amendment was made on December 22, 1943. Thereafter, on January 29, 1944, the decree was entered. By the decree the court found that appellees had the right to select the particular 80 acres of land which they would take under the devise contained in paragraph 9 of the will; that such selection had been made; that they had selected the north 80 acres, the title to which the decree vested in them under the will, and in accordance with the estates therein devised.

In support of the decree, appellees contend that they had the right, under paragraph 9 of the will, to select the 80 acres devised to them. It is conceded by appellees that this so-called doctrine of the right of selection has never been invoked or approved by the courts of this State. They argue, however, that it has never been disapproved by this court and has been followed by some courts in other jurisdictions. In support of the rule, cases are cited from a few foreign States. These cases all seem to have been based on the case of *Duckmanton* v. *Duckmanton,* 5 H. & N. 219, which is an English case of great antiquity. In that case the rule was mentioned in determining the intention of the testator from the language used and the surrounding cir-

cumstances. Some of the cases, however, principally relied upon, are decisions of county and inferior courts.

A careful examination of the cases cited discloses that in most of them the doctrine of the right of selection was applied, not as a fixed rule, but because it appeared from the particular language of the will that the testator so intended. It was usually resorted to for the purpose of avoiding intestacy. The doctrine was not applied as a definite rule applicable where there was a devise of a number of unlocated acres out of a larger tract, but because the court found from the language of the will that the testator intended to give to the particular devisee the right of selection. In none of the cases cited was the language of the will or the surrounding circumstances comparable to the language and the surrounding circumstances here involved. The few cases in which the rule has been mentioned show that it has no definite or fixed purpose or operation. The cases, when analyzed, show that what the courts really did was to use the so-called rule as an argument in arriving at the intent of the testator from the language used. These cases are collected in the notes in 69 C. J. pp. 359 and 384. They indicate that if the so-called rule ever had a definite meaning or existence it is now both antique and esoteric. It has received only passing notice by a minority of modern text writers.

Whether this court should approve the so-called doctrine of the right of selection, solely from the devise of a designated number of unlocated acres out of a larger tract, without other facts from which such intention of the testator appears, need not now be determined. It is sufficient for the purposes of this case to say that the intention of the testator, expressed in the language used in the will, does not indicate that any such right of selection was given to appellees. There is nothing in the relationship of the parties to the testator from which such intention would

arise. Their relationship was substantially the same. The order in which the names and devises appear in the will affords no ground for saying that he intended to prefer his nephew over his niece, by giving him and his family the right to select the portion of the farm which they would take under the will. All of the language of paragraphs 9 and 10 indicates an intention on the part of the testator to be fair and just and to divide the farm, based on its value, including the buildings, equally.

Much speculation is indulged by counsel on both sides as to language which the testator might or could have used, either in support of or against their respective views, as to his intentions. As we view the language of paragraphs 9 and 10 of the will, such speculation is not only unnecessary, but would be wholly improper. The difficulty with appellees' contention, that the testator intended that they should have the right of selection, is that there is nothing in the will to support it. There is nothing from which it may be inferred that he intended to prefer the devisees mentioned in paragraph 9 over the devisee mentioned in paragraph 10, to the extent of giving the former the right of selection and first choice. If any speculation could be indulged at all, we think it fair to assume that he believed when he devised 80 acres of land, on which the buildings were located, to his nephew and his family, and the remaining approximately 135 acres of bare land to his niece, this constituted a fair division of the whole farm, including the buildings. But, be that as it may, paragraphs 9 and 10 of the will must be construed together. When those paragraphs are construed together, the intention of the testator is clear. He devised the 215-acre farm to the devisees mentioned in those paragraphs. For some reason, which is wholly immaterial, he did not see fit to apportion the devise between them. Whether he thought they would be able to reach an amicable division, or whether he felt that in case they were unable to do so, they should resort to a

court of equity, need not be here considered. The fact remains that he did devise the 215-acre farm to the devisees mentioned in paragraphs 9 and 10, in the proportions clearly indicated by the language used. He wanted to make sure, and did make sure, by the language used, that the devisees in paragraph 9 should have 80 acres of land which should include all the farm buildings. So far as devising the farm to the devisees named in the two paragraphs and the proportions in which they should receive it, designated by acres, the will is clear and cannot be said to be ambiguous. The only ambiguity is as to its division. For reasons which he deemed sufficient, he made no attempt to divide the property, except as to the number of acres each should receive. He specified further that the 80 acres referred to in paragraph 9 should include the buildings. The intention of the testator, and the effect of the language used, are not rendered uncertain by the failure of the testator to divide the devise. In this situation there is clearly no intention expressed by the testator that either should have first choice or any preference over the other, except he specified that the 80 acres going to the devisees under paragraph 9 should include the buildings. Under no circumstances would there be any basis for the application of the so-called doctrine of the right of selection, and the decree, based upon such right, cannot be sustained. The court also clearly erred in decreeing to appellant a right of way across the land set off to appellees, and directing that she keep such right of way enclosed with hog-tight gates. The plain effect of the decree was to make a new will for the testator, wholly different from the one executed by him. This it had no right to do.

The allegation of appellant in her amended counterclaim that paragraph 9 of the will should be construed as devising to appellees 80 acres in rectangular form, out of the northwest corner of the quarter section, is equally untenable. It would be just as logical to contend that said

paragraph should be construed as devising to appellees a like 80-acre tract out of the northeast corner, through the center, or any other part of the whole 215 acres, which would include the buildings. In fact, appellant has made no effort in this court to support that contention.

The second contention of appellant is that the effect of the ninth and tenth paragraphs of the will, when construed together, was to vest title in appellant and appellees to the 215 acres, as tenants in common, 80/215 in appellees and the balance of appoximately 135/215 in appellant. We think this contention is sound and affords the only logical and reasonable construction of said paragraphs. The sole purpose in construing a will is to determine the intention of the testator. (*Hartwick* v. *Heberling,* 364 Ill. 523.) As we have already indicated, the intention of the testator, expressed in those two paragraphs, is clear. He intended to devise to appellant and appellees the Station Street Farm, consisting of 215 acres. This intent is clearly expressed in the will. When paragraphs nine and ten are construed together, the will cannot be said to be ambiguous in so far as this devise is concerned. The intention is clearly expressed that appellant and appellees should receive unallocated portions of this farm, each portion defined according to acreage, the portion devised to appellees further defined to include the buildings.

In *Smith* v. *Crawford,* 81 Ill. 296, this court said: "The deed from Cook and wife, referred to in the description, conveys to George A. Crawford and Allison White, 'an undivided ten acres of land in the east half of section 2, township 39, range 13, etc., in Cook county.' This is equivalent to a grant of an interest in the entire tract, equal to the proportion which ten acres bear to the number of acres in the entire tract. It is said, in Freeman on Cotenancy, § 96, 'If the owner of a tract convey a number of acres, less than the whole, without any designation of their locality, the grantee thereby acquires an interest in

the whole tract, as tenant in common with the grantor. The interest of the grantee is in the proportion which the number of acres conveyed to him bears to the whole number, and entitles him to all the rights and remedies incident to a tenancy in common.' This is sustained by the following, among other decided cases: *Jackson* v. *Livingston,* 7 Wendell, 136; *Corbin* v. *Jackson,* 14 id. 619; *Gibbs* v. *Swift,* 12 Cush. 393; *Jewett* v. *Foster,* 14 Gray, 495; *Canning and Wife* v. *Pinkham and others,* 1 N. H. 353; *Ring* v. *Ashworth,* 3 Iowa, 452; *Schenck et al.* v. *Evoy et al.,* 24 Cal. 104."

In *Gill* v. *Grand Tower M. M. & T. Co.* 92 Ill. 249, in discussing the same question, this court said: "From the various averments of the petition it is apparent that the land sought to be set apart to the petitioner is twenty acres out of fractional sec. 23 and the north-west quarter of sec. 24, in town 10 south, range 4 west, in Jackson county. From some expressions in the earlier decisions of this court there might be some doubt in regard to the right of a party to have twenty acres out of a certain tract of land set off, on account of a supposed defect in a description of that character; but in *Smith* v. *Crawford,* 81 Ill. 296, it was held that if the owner of a tract of land conveys a number of acres less than the whole without designating their locality, the grantee acquires an interest in the whole tract as a tenant in common, in the proportion which the number of acres conveyed bears to the whole tract. Here, a certain tract was conveyed, excepting and reserving twenty acres, without describing it. Under the rule announced in the case cited, the owner of the twenty acres became a tenant in common with the owner of the balance of the tract."

In *Heller* v. *Heller,* 147 Ill. 621, this court approved the above statement of the rule in the following language: "Construing the second paragraph in the light of that presumption, it seems clear that he intended to devise the re-

mainder in the entire premises in question to or for the benefit of his three sons. But as he has made the devise without such descriptions as are sufficient to vest in them distinct portions of the property in severalty, it necessarily follows that the devise is to be construed as vesting the property in them in equal portions as tenants in common, that is to say, an undivided one-third each to his sons Otto and Louis, and an undivided one-third to the trustees of his son George. This is the interpretation put upon the will by the Circuit Court, and we are of the opinion that its decree in that respect is correct."

The rule announced in the above cases is so logical and indispensably correct that it requires no citation of authorities to sustain it. It is fundamentally accurate and must be resorted to whenever a testator devises a tract of land to two or more devisees, parts of which he clearly intends shall vest in each in severalty, but fails to designate particularly such parts. Until such time as a division is made the title to the entire tract vests in the devisees as tenants in common in the proportions defined in the will, such proportions to be determined by acreage, or otherwise, as indicated by the language used. The lands so devised are subject to all the incidents of cotenancy, except as limited and restricted by the will.

Here, by paragraphs 9 and 10 of the will, the testator devised the 215-acre farm to the devisees named in those paragraphs. By paragraph 9 he specifically provided that 80 acres of the land, which should include the buildings, should go to the devisees named in that paragraph. By the tenth paragraph he specifically provided that the remaining "undivided" 140 acres, more or less, should go to appellant. He thus clearly indicated by the use of the word "undivided" that he intended to make a joint devise, and that division should be made between them on the basis of 80 acres, including the buildings, to appellees, and the balance to appellant.

In opposing this construction, appellees argue that such construction would defeat the intention of the testator. It is said that he never intended that the devisees should be forced to go into a court of equity for partition and division of the real estate devised. This argument cannot be based on anything appearing in the will. Such argument prompts the query, What would an able lawyer with years of experience, a judge on the circuit bench, contemplate as the result where lands are devised or conveyed to two or more with an unlocated number of acres to each? The answer is obvious and admits of no speculation. It is further argued that as a result of such partition the land would be subject to sale and that appellees would thereby lose the buildings located on the farm, which were devised to them by the will. This argument is entirely without weight. It has no basis either in law or the facts. In the first place, if we were permitted to speculate as to the unexpressed intention of the testator, the conclusion would be irresistible that from his long experience as a lawyer and a judge, he knew that if he devised the farm to appellant and appellees without specifically dividing it between them, if they could not reach an agreement as to the division thereof, they would be compelled to resort to a court of equity. The argument that a division by the decree of a court would result in the sale of the farm and the loss of the buildings to appellees, carries no weight. Under the will, the farm is to be divided into two parts. The proportions in which it is to be divided are clearly set out in the will, 80 acres to one and the balance to the other. It is to be divided by acres, and not by value. Certainly no one would seriously contend that 215 acres of land, located as this farm is located, cannot be divided into two parts, one part consisting of 80 acres and the other part consisting of what remains. In making such division the buildings are, in nowise, involved, except that the tract set off to appellees must include the buildings. In the division of

this property, in the manner provided in the will, the court could not order a sale and there would be no occasion for so doing. The court, by its decree, should direct the commissioners merely to divide the land into two tracts in such manner as will be fair and equitable to both parties, including in the tract set off to appellees, the land on which the buildings are located. No sale would or could be necessary, nor could a sale be properly ordered by the court. It would not, in that respect, be similar to an ordinary partition suit, where the property is to be divided according to its value alone. The court should simply decree the division of the land into two tracts in such manner as will be fair and equitable to both parties, with only the limitation that the buildings be located on the 80-acre tract set off to appellees. The court should see to it that a fair division of the land is made, taking into consideration the character and location of the land set off to each, and disregarding, for that purpose, the value of the buildings which go to appellees.

The court below also erred in taxing the costs to the estate. The estate is not interested in this controversy. It is a controversy solely between devisees involving the division of the devise to them. The estate is in nowise interested in such division. That being true, the costs should not be taxed to the estate. Each of the parties should pay her or their own attorney's fees and the balance of the costs in the trial court should be apportioned between the parties, one half to appellees jointly, and one half to appellant, and be taxed accordingly. The costs in this court will be taxed to appellees. This conclusion eliminates the alternate contion of appellant that this land passed either under the residuary clause of the will, or as intestate property.

The decree of the circuit court of Kankakee county is reversed. Upon the allegations in the amended complaint appellees were not entitled to relief on that complaint. The cause is remanded to the circuit court of Kankakee county

with directions to dismiss the original complaint for want of equity and to enter a decree on the amended counter-claim, appointing commissioners to divide the lands described in paragraphs 9 and 10 of the will, in accordance with the views herein expressed. The court will also take all such other and further necessary proceedings not inconsistent with this opinion.

*Reversed and remanded, with directions.*