(No. 11960.—Decree affirmed.)
JOHN F. FRIEDMAN, Appellee, *vs.* DOROTHY M. FRIEDMAN *et al.* Appellants.

*Opinion filed April 17, 1918.*

1. WILLS—*what is a contingent remainder with a double aspect.* Where the disposition of property in remainder is made in the alternative, the one remainder to take effect only in case the other does not and in substitution of it, the remainders are said to run concurrently, and are commonly spoken of as alternative remainders or contingent remainders with a double aspect.

2. SAME—*what is a contingent remainder.* A remainder limited to take effect to dubious and uncertain persons or upon a dubious and uncertain event is a contingent remainder.

3. SAME—*contingent remainder is destroyed by merger of life estate and reversion.* Where a testator gives his wife a life estate in his property and devises the remainder to such of his children as survive his wife, provided that if any child shall die during the continuance of the life estate the children of such deceased child shall take their parent's share, the remainders are contingent with a double aspect, and will be destroyed when the life tenant and the testator's heirs join in a deed conveying the life estate and the reversion.

4. PARTITION—*right to partition is absolute and motives of the parties cannot be questioned.* The right to partition conferred by section 1 of the Partition act is absolute, and where the statutory requisites are met by the pleadings and proofs the court has no discretion to refuse to entertain the proceedings, regardless of the motives of the parties entitled to the partition, as under section 39 of the act all questions of conflicting rights and titles to the premises may be brought before the court.

APPEAL from the Circuit Court of Peoria county; the Hon. CLYDE E. STONE, Judge, presiding.

N. C. SEIDENBERG, for appellants.

MANSFIELD & COWAN, for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

On June 10, 1909, John Friedman departed this life testate at his home in Peoria county, leaving him surviving Emma E. Friedman, his widow, and Amelia C. Oertley, Bertha C. Calhoun, John F., William E. and Emma B. Friedman, his children and heirs-at-law. By his last will and testament, dated June 5, 1909, and particularly the second, ninth and twelfth clauses thereof, he provided, among other things, as follows:

"*Second*—I will and devise to my beloved wife, Emma E. Friedman, the homestead farm, containing about four hundred and sixty (460) acres, situated in section twelve (12), in Princeville township, Peoria county, Illinois, during the term of her natural life. * * *

"*Ninth*—To such of my children as may be living at the death of my said wife I will and devise the lands above designated as the homestead farm in Princeville township, Peoria county, Illinois, to be held by them in fee, but if any of my said children have died leaving children, then such division shall be on the basis of giving to such children or child of one of my deceased children the parent's share, the same as if said parent had lived longer than my said wife.

"*Twelfth*—The rest, residue and remainder of my estate not herein specifically devised or bequeathed I will to my children, share and share alike, the children of any deceased children to have the parents' share."

On March 2, 1917, the widow conveyed all of her life interest in said lands to William C. Annegers. On the same

day all of the children of John Friedman, and their respective spouses, also conveyed all of their interest in such lands to Annegers. The latter deed recited the death of John Friedman, testate, and set forth at length the second and ninth clauses of his will and the making of the deed by Emma E. Friedman to Annegers, and alleged that under a proper construction of said will the grantors, the children of Friedman, were entitled to the reversion in fee in said premises, and that it was their purpose and desire to convey such reversion in fee to the grantee, so that the life estate of Emma E. Friedman should be merged in said reversion and the contingent remainder created by said will in the children of any child of the testator that might not survive the life tenant be destroyed and the grantee in the deed vested at once with the legal estate in fee simple in said premises. On the same day Annegers conveyed all of his right, title and interest in said lands to John F. Friedman and Robert Oertley, who now claim to be owners of the same as tenants in common, in fee simple. At the time these conveyances were made John F. Friedman had two children, Dorothy M. and Emma M. Friedman. Amelia C. Oertley had one child, Leila E. Oertley. Bertha C. Calhoun had three children, Verna A., Viola M. and Eldon T. Calhoun; and William E. Friedman had one child, Marjory E. Friedman. All of said children are minors under ten years of age and are the appellants in this case.

On April 23, 1917, John F. Friedman filed his bill in the circuit court of Peoria county for partition of the lands in controversy and for a construction of the foregoing provisions of the will of John Friedman. He made Robert Oertley and the minor children of the grantors parties defendant to the bill. The bill set forth the facts above stated, and charged that under the second and ninth clauses of the will the reversion in fee was not devised but descended under the twelfth clause of the will to the children of the testator as in case of partial intestacy, pending the death of

283 – 25

the life tenant; that by the conveyances above mentioned the contingent remainder limited over to the child or children of any child of the testator who should die during the pendency of said life estate was destroyed and the life estate and the reversion merged into an estate in fee simple in said Annegers, and that by his deed to Friedman and Oertley they became seized, as tenants in common, of an indefeasible title in fee simple in said real estate. The above mentioned minor children were made parties defendant as persons claiming some interest in said estate and a guardian *ad litem* was appointed to protect their interests. The trial court held that by the conveyances above mentioned the life estate of the widow and the reversion in fee in the children of John Friedman were merged in Annegers and the contingent remainders to the grandchildren of the testator extinguished and destroyed by such conveyances and the title in fee simple vested in Annegers, and that by his deed to John F. Friedman and Robert Oertley each became seized, as tenants in common, in equal parts, of an indefeasible title in fee to said property and were entitled to partition thereof in such portions, and decreed accordingly. From this decree the minor children, by their guardian *ad litem,* have prosecuted their appeal to this court.

The sole question involved is as to the construction of said clauses of the will of John Friedman. Appellee contends that under the second and ninth clauses no disposition was made of the reversion in fee, and that upon the death of the testator the same vested in his heirs under the twelfth clause as in cases of partial intestacy, and that by the deeds from the life tenant and children to Annegers the life estate and the reversion were merged in such grantee as an estate in fee simple absolute and the contingent remainders extinguished and destroyed, and that the deed from Annegers to Friedman and Oertley invested them, as tenants in common, with the fee simple to said property. Appellants do not dispute this proposition, but, on the contrary, contend

that the doctrine of the destructibility of contingent remainders ought not to be applied in this case, and that the bill should be dismissed for the reason that it appears its primary object is not to secure partition of the real estate but to procure a construction of the will of John Friedman and to invest appellee with the fee simple title absolute to said property.

The important question in this case is as to the character of the estates created by the second and ninth clauses of the will, and the effect on such estates of the conveyances by the widow and children of the testator to Annegers.

In construing wills it is the constant effort of the courts to ascertain and give effect to the intention of the testator as expressed in the will. In case of doubt such intention is to be gathered from a consideration of the whole will and all its parts. In the instant case there can be little doubt as to the intention of the testator. By the second clause he gives his wife, the widow, a life use of the homestead property. By various other clauses in the will he makes specific devises and bequests to his children of other property than the homestead estate. By the ninth clause he undertakes to dispose of the remainder in fee in the homestead property after the termination of the life estate of his widow. This he does by providing that the fee in the property shall descend to "such of my children as may be living at the death of my said wife." Had he stopped here there could be but little doubt as to the character of the estate created by such clause or the time when it should vest. The persons who are to take are the testator's children who survive the life tenant, and the title is to vest in them upon the death of the life tenant. Should any of the children of the testator die during the pendency of the life estate their issue would not take, for the reason that by the express provisions of the will the estate in remainder is limited to such of the children of the testator as survive the life tenant, and the children of a deceased child would not be of that

class. In order to provide against this contingency the further provision is made that in the event any of his children should die during the pendency of the life estate their children shall take their parents' share. It will thus be seen that by the provisions of this clause two estates in remainder are created,—one in the children and the other in the grandchildren of the testator. The second is to take effect only in case the first does not and in substitution for it. Remainders of this character, in which the disposition of the property is made in the alternative, the one to take effect only in case the other does not and in substitution of it, are said to run concurrently, and are commonly spoken of as alternative remainders or contingent remainders with a double aspect. 40 Cyc. 1643; *Furnish* v. *Rogers,* 154 Ill. 569; *Smith* v. *Chester,* 272 id. 428.

Estates in remainder are divided into two general classes: vested and contingent. They arise whenever the owner of the fee creates an estate less than the fee, such as for life or years, (called the particular estate,) to take effect in possession, and disposes of the balance of his estate to one other than the owner of the fee, to take effect immediately upon the determination of the particular estate. The chief distinction between a vested and contingent remainder is, that in the former the reversion in fee passes at once out of the owner and vests in the remainder-man, while in the latter it remains in such owner or his heirs until the happening of the contingency upon which the reversion in fee is to vest. (Williams on Real Prop. *246.) It follows from this that the former is alienable while the latter is not, for until the happening of the contingency upon which the reversion is to vest there is no estate in the remainder-man which he can convey. A contingent remainder, therefore, cannot be alienated. Another peculiarity about such remainder is, that while it is said to be an estate it is destructible, and may be destroyed at any time before vesting by the joint action of the owners of the par-

ticular estate and the reversion in fee. This results from the nature of an estate in fee, which is the highest estate known to the law and consists of the particular estate and the reversion in fee. From this it follows that a contingent remainder will be destroyed whenever there is a union of the two estates in the same person. When this occurs the remainder will be destroyed, as the particular estate and reversion will merge into a fee, and there can be no remainder limited to take effect after an estate in fee. (2 Blackstone's Com. 165.)

With these general rules in mind there can be no doubt as to the effect of the conveyances in question. By the second clause of the will the testator created an estate for life in his wife, with an alternative or contingent remainder with a double aspect in such of his children as should survive the life tenant, or the children of such of his children as should die during the pendency of the life estate leaving children. The remainder is contingent for the reason it is limited to take effect to dubious and uncertain persons, for until the death of the life tenant it is uncertain that any of his children will survive her or that such as may die during the pendency of the life estate will die leaving children capable of taking under the will. A remainder limited to take effect to dubious and uncertain persons or upon a dubious and uncertain event is a contingent remainder. (2 Blackstone's Com. 168; *Thompson* v. *Adams,* 205 Ill. 552; *Golladay* v. *Knock,* 235 id. 412; *Brownback* v. *Keister,* 220 id. 544; *Smith* v. *Chester, supra.*) In this instance the reversion in fee did not pass out of the owner and vest in the remainder-man, but remained in him and vested in his heirs under the twelfth clause of the will, pending the determination of the particular estate. When these heirs, together with their mother, the owner of the particular estate, joined in the conveyances to Annegers, he at once became seized of an estate in fee simple and the estate in remainder was thereby destroyed, (*Barr* v. *Gardner,* 259

Ill. 256; *Bond* v. *Moore,* 236 id. 576; *Messer* v. *Baldwin,* 262 id. 48; *Blakeley* v. *Mansfield,* 274 id. 133;) and the deed from him to Friedman and Oertley invested them with the grantor's indefeasible title in fee simple, and they were entitled to have partition made of such estate in accordance with their respective rights and interests therein, free and clear of any claims which the remainder-men might have in such estate.

Section 1 of the Partition act (Hurd's Stat. 1916, p. 1948,) authorizes partition to be made where land is held in joint tenancy, tenancy in common or co-parcenary, by proceedings in the circuit court of the county in which the real estate is situated. We have held that the right conferred by this section is absolute, and that the court has no discretion to refuse it where the statutory requisites are met by the pleadings and proofs. (*Miller* v. *Lanning,* 211 Ill. 620.) By section 39 of the same act it is further provided that in such proceedings the court may investigate and determine all questions of conflicting titles and remove clouds from the title of the premises sought to be partitioned. That is what is sought to be done by the bill in this case. Friedman and Oertley were each seized in fee simple, as tenants in common, in equal parts, of the real estate in controversy. When Friedman applied to Oertley to make partition he refused to do so by reason of uncertainty as to the title they had because of the remainders created by the ninth clause of such will. Under these circumstances it was necessary for Friedman to resort to a court of chancery to secure partition of such premises. When he did so he had a right, under the provisions of section 39, to bring all questions of conflicting rights and titles to the premises before the court and have the same adjudicated and determined in such proceeding. (*Henrichsen* v. *Hodgen,* 67 Ill. 179; *Gage* v. *Lightburn,* 93 id. 248; *Iberg* v. *Webb,* 96 id. 415.) This is what was done here. Where the rights conferred by a statute are absolute, the motive of the par-

ties in resorting to such proceedings cannot be questioned when the statutory requisites for the institution of such proceedings are met by the pleadings and proofs.

For the reasons given the decree of the circuit court was right and will be affirmed.                *Decree affirmed.*

---

(No. 11965.—Judgment affirmed.)
THE PEOPLE *ex rel.* Maclay Hoyne, Appellant, *vs.* W. W. GRANT *et al.* Appellees.

*Opinion filed April 17, 1918.*