(No. 13557.—Decree affirmed.)
JESSIE R. FISHER, Appellee, *vs.* LILLIE EASTON, Appellant.

*Opinion filed October 22, 1921.*

1. WILLS—*when devise creates alternative contingent remainders.* A devise to a life tenant with remainder to the heirs of her body, if 'she has any, with a provision that if she has no heirs of her body at the time of her death the property shall go to her sister, must be construed as creating alternative contingent remainders.

2. SAME—*there is no merger where life tenant takes life estate and reversion by the same will—conveyances.* There is no merger where a devisee takes a life estate in one clause of a will and is given the reversion in fee by the residuary clause of the same instrument, but a merger will take place when the devisee by separate deeds conveys both the life estate and the reversion in fee to the same grantee, and any contingent remainders intervening will be cut off and destroyed.

· 3. SAME—*when a residuary clause devises a reversion in fee.* Where a life estate has been devised and contingent remainders have been limited thereon, a residuary clause which is broad enough to include every interest that the testator has in any real or personal property will pass the reversion in fee to the residuary devisees if there is no contrary intention discoverable in the will.

APPEAL from the Circuit Court of Winnebago county; the Hon. ROBERT K. WELSH, Judge, presiding.

ROY F. HALL, and J. E. GOEMBEL, for appellant.

FISHER, NORTH, WELSH & LINSCOTT, for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Horace F. Mather died testate January 13, 1914, leaving no surviving widow but leaving surviving him Lillie Easton and Mary C. Burch, (the latter being referred to in his will as Mae C. Burch,) his two daughters and sole heirs-at-law. He died seized in fee of the real property described in the second clause of his will. Mae C. Burch was forty-seven years of age in 1920, when this suit was brought, had been married to William C. Burch sixteen years, had no children or descendants of children and had no prospect of a child

being born to her in the near future. The testator executed his will July 24, 1913, and it was duly probated in the county court of Winnebago county. He willed all of his property to his two daughters, after providing for the payment of his debts and funeral expenses, in the following language:

"*Second*—It is my will that my daughter Mae C. Burch have the life use and life estate during her natural life in that portion of the home farm located in Rockford township, county of Winnebago and State of Illinois, and that at her death said above described property is to go to the heirs of her body, if she has any. In the event that she has no heirs of her body at the time of her death then it will go to my daughter Lillie Easton.

"*Third*—I hereby give, devise and bequeath to my daughters, Mae C. Burch and Lillie Easton, all the residue of my real estate and personal property of every kind and description, wherever the same may be found, share and share alike, and to have and to hold the same as their own property unconditionally."

On June 2, 1919, Mae C. Burch and her husband executed and delivered to appellee, Jessie R. Fisher, a warranty deed, by which they purported to convey and warrant an undivided one-half in fee and her life estate in the whole of the land devised to her by the will and described in the second clause thereof. The land was specifically described in the deed, which located it with reference to the sections and townships in which it was located, in the manner that lands are ordinarily described, and the oral evidence shows the land so described to be the same land devised in the second clause of the will. The deed contained this recital: "It is the purpose and intention by this deed that the life estate given to Mary C. Burch (who is named in the last will and testament of Horace F. Mather, deceased, as Mae C. Burch,) shall merge in the reversion in fee in the grantor, and that such reversion be thereby extinguished and permanently destroyed and the grantee vested at once with the

legal estate in fee simple in possession and any contingent future interest in the remainder-man destroyed." Thereafter, on April 6, 1920, Mary C. Burch and her husband, for the express purpose of correcting the language of the deed of June 2, 1919, executed their quit-claim deed purporting to convey the same interest in said land to the same grantee, in which quit-claim deed it was explained, in substance, that it was the life estate in one-half of said land that was intended to be by the former deed prematurely destroyed instead of the reversion in fee, as in said former deed recited.

On April 12, 1920, appellee, Jessie R. Fisher, filed her bill for partition in the circuit court of Winnebago county, setting out the foregoing facts and praying that she be decreed to have and to hold the fee simple title in and to the undivided one-half of said land and the life estate devised to Mary C. Burch in the other undivided one-half, and that the fee of the remaining undivided one-half, subject to the life estate conveyed to appellee, vested in the appellant, Lillie Easton, subject to the terms and conditions of the will. Lillie Easton and her husband, George Easton, Mary C. Burch and her husband, and Jennie Bois, were made parties defendant to the bill. The Eastons filed their answer to the bill, to which a replication was filed. Mary C. Burch, William C. Burch and Jennie Bois, a tenant of the premises, entered their appearance in writing as defendants in the case and were afterwards defaulted for failure to answer as ruled by the court. The decree of the circuit court found and decreed that appellee was the owner in fee of an undivided one-half of said premises and of the life estate devised to Mary C. Burch in the remaining undivided one-half, and that the reversion in fee to the remaining undivided one-half was vested in Lillie Easton subject to the life estate of Mary C. Burch and subject to being divested pursuant to the terms of the will, and that partition be had as prayed. Lillie Easton appealed from that decree to this court.

It is entirely clear that by the provisions of the second clause of the will Mary C. Burch takes a life estate and that the remainders following it are alternative remainders, commonly spoken of as contingent remainders with a double aspect. (*Friedman* v. *Friedman,* 283 Ill. 383.) The second limitation to Lillie Easton is to take effect only in case the first does not and in substitution for it. The first limitation is necessarily a contingent remainder. It is a limitation to dubious and uncertain persons because of the fact that such persons were undetermined and could not be determined until birth of such issue and the death of Mary C. Burch leaving issue surviving her, and it was uncertain whether or not there ever would be any persons answering the description of heirs of the body of Mary C. Burch. The limitation to Lillie Easton must therefore also be held to be a contingent remainder, because her taking depends upon a dubious and uncertain event,—the death of the life tenant without leaving at the time of her death heirs of her body.

The remainder after the life estate being contingent, all of the estate of the testator was disposed of by the second clause of the will except the reversion in fee created by operation of law. Upon the death of the testator the legal fee or reversion descended to the testator's legal heirs, Mary C. Burch and Lillie Easton, unless it was passed to them by the third or residuary clause of the will. This reversion in fee is a vested interest and therefore indestructible. It was such an interest as might be conveyed by will or by deed, and under the uniform holdings of this court a merger of a life estate with the reversion in fee simple results, under the common law doctrine of merger, when the life estate and the reversion are united or passed to the same person, with the qualifications that where the life estate and the reversion occur at the same time and by the same instrument, or where the life estate is devised by will and the life tenant takes the reversion by descent and at the same time he takes under the

will, there will be no merger. *(Gray* v. *Shinn,* 293 Ill. 573.)
This same doctrine of merger is supported by a number of
other cases decided by this court. *(Bond* v. *Moore,* 236 Ill.
576; *Lewin* v. *Bell,* 285 id. 227; *Belding* v. *Parsons,* 258 id.
422; *Benson* v. *Tanner,* 276 id. 594; *Cole* v. *Cole,* 292 id.
154.) There was no merger of the life estate in the rever-
sion or legal fee prior to the conveyance of the land by the
life tenant and her husband, but such a merger did take place
when these deeds were executed and delivered to appellee,
as the remainder or remainders intervening were still con-
tingent, and for the reasons given in the cases above cited
they were cut off or destroyed. This is necessarily so with-
out regard to the question whether or not the reversion was
passed by the residuary devise in the third clause of the will,
because if it did not so pass, the reversion or legal fee
descended to the testator's heirs, who are the devisees named
in such clause. This legal fee did not lose its legal qualities
of a vested, indestructible fee by reason of the fact that it
was devised or passed to the testator's daughters by the
residuary clause, if it was so passed. The moment the tes-
tator made the devise in the second clause of the will there
was no further estate to devise in that land except the re-
version in fee arising by mere operation of law. He could
devise it or convey it by another will or deed to any person
he pleased, and devising it by the same will to the life tenant
and her sister by the residuary clause, if he did so, could
not have the effect to change it into an executory devise or a
contingent, destructible remainder. It would still continue
to be a reversion in fee, a vested interest and indestructible,
and still capable of being transferred by deed or devised by
will by the heirs and the residuary devisees.

The reversion in fee was passed by the testator to his
two daughters by the residuary clause. That clause was
broad enough to include this reversion and every other
interest that the testator had in any other land or personal
property. There is no intent discoverable in the will that

the reversion should not so pass, and the English authorities and the English cases hold that such interest does pass by a residuary clause as well as by a specific clause in a will, unless a contrary intent is discoverable. (1 Jarman on Wills, (5th Am. ed.) *647, *648, *et seq.; Egerton* v. *Massey,* 3 C. B. (N. S.) 338.) In the last case cited, both Cockburn, C. J., and Williams, J., who delivered opinions in the case, speak of the vested interest in fee in which the life estate merged, as a reversion and not as a remainder. That case is practically on all-fours with the case now before us. The limitations were by a devise by Elizabeth Glover, in substance, to her niece, Eunice Highfield, for life, remainder to her children living at her death, and in default of such children to Peter Highfield in fee; and after the death of the testatrix the life tenant, by conveyance to one Jackson before any of the contingencies happened upon which the remainders were to vest, merged her life estate in the reversion and thus destroyed the contingent remainders, according to the holding of the court. There is an interesting discussion of that case to be found in Gray's Rule Against Perpetuities, sec. 113*a,* and in Kales on Estates and Future Interests, (2d ed.) secs. 95, 306.

The same holding we now make in this case was made in *Friedman* v. *Friedman, supra,* and in *Benson* v. *Tanner, supra,* wherein practically the same questions were involved as in this case. It therefore appears from what we have already said and held, that the decree of the lower court is right and should be affirmed.

There are a number of other technical questions raised by appellant which we have considered and which cannot be maintained for reasons appearing in the decisions of this court above cited.

The decree of the circuit court is therefore affirmed.

*Decree affirmed.*