(No. 30014.—

ELIZABETH BIBO *et al.,* Appellees, *vs.* MYRTLE F. BIBO, Appellant.

*Opinion filed September 18, 1947.*

LAWRENCE B. MOORE, of Paris, for appellant.

COTTON, MASSEY & NIMZ, (ROBERT F. COTTON, and HAROLD E. NIMZ, of counsel,) all of Paris, for appellees.

Mr. CHIEF JUSTICE MURPHY delivered the opinion of the court:

This is an appeal from a decree entered in the circuit court of Edgar county. It determines the ownership of

the title to certain lands located in that county. On and prior to January 25, 1921, Philip Bibo owned the premises involved. On that date, he and his wife executed a statutory form of warranty deed conveying a part of the tracts to Max S. Bibo. Eight days later they executed a second deed, identical with the first, except as to date and description, conveying the remainder of the tracts to the same grantee. The granting clauses were as follows: "Convey and warrant to Max S. Bibo and his bodily heirs of Paris, in the county of Edgar and state of Illinois, the following described real estate," etc. The deeds contained no *habendum*.

Philip S. Bibo died testate on June 3, 1928. His wife, Elizabeth Bibo, survived and was the sole beneficiary of the will. Four sons, one of whom was the grantee, Max S. Bibo, and one daughter were his only heirs-at-law. At the time the deeds were executed Max S. Bibo was married to Myrtle F. Bibo. He died testate July 23, 1944, without having had any bodily heirs. Myrtle F. Bibo survived and was the sole beneficiary in the will of her husband.

Elizabeth Bibo and the heirs-at-law of Philip Bibo started this action against Myrtle F. Bibo, in her individual capacity and as executrix of the will of Max S. Bibo, to have the title to the premises decreed to be in Elizabeth Bibo. Such action was founded on the theory that the deeds granted an estate tail as at common law, which, by operation of section 6 of the Conveyance Act, (Ill. Rev. Stat. 1945, chap. 30, par. 5,) was converted into a life estate in Max S. Bibo, with remainder in fee to his bodily heirs. Since Max S. Bibo had no bodily heirs, it is contended the remainder passed under the will of Philip Bibo to the sole beneficiary, Elizabeth Bibo.

Myrtle F. Bibo asserted her claims to the property by answer and counterclaim. She contended the conveyance to Max S. Bibo and his bodily heirs, of Paris, in the county of Edgar, State of Illinois, was the conveyance of a present

estate and since there was no one in existence to take as bodily heirs, the conveyance was void as to them, thereby resulting in Max S. Bibo taking the full title in fee. If such contention finds support in the law, then Myrtle F. Bibo would, as the sole beneficiary of the will of Max S. Bibo, take the fee-simple title to all the lands. An alternative to the foregoing is urged on behalf of Myrtle F. Bibo. It is said that if it should be determined that the deeds granted estates tail as at common law, which section 6 of the Conveyance Act converted into life estates in Max S. Bibo with remainder in his bodily heirs, then upon failure of bodily heirs to Max S. Bibo, the contingent remainder became vested in those persons who were the heirs-at-law of Philip Bibo at the time of his death. Max S. Bibo being one of five of such heirs, it is contended that Myrtle F. Bibo became the owner of such one-fifth as the sole beneficiary of the will of her husband.

The chancellor sustained the construction urged by Elizabeth Bibo and her coplaintiffs, and entered a decree vesting the full fee-simple title in her. Myrtle F. Bibo has appealed from such decree.

The question presented is one of construction. The primary rule in construing a deed is to ascertain the intent of the grantor and to give effect to such intent if not in conflict with some rule of law. If Philip Bibo had intended to grant Max S. Bibo the full title, then by the use of the statutory form of warranty deed, his grant would have been to Max S. Bibo, or if the grant had been to Max S. Bibo and his heirs generally, then by application of rules of law the result would have been the same and the grantee would have taken the full title. But the grant runs to Max S. Bibo and his bodily heirs. The primary question is as to whether the words "his bodily heirs" are words of purchase, that is, describing the persons who were to take as grantees with Max S. Bibo, or are words of limitation, that is, do they limit the estate of the

first taker and create an estate tail as at common law? If the words are to be construed as words of limitation, then at common law an estate was created in the bodily heirs of Max S. Bibo which would have continued in direct line so long as his posterity endured, and in regular order and course of descent and until there was an extinction of such issue. If the words "and his bodily heirs" are words of purchase, then the grant as to such class is a nullity for there were no bodily heirs of Max S. Bibo in existence when the conveyances were made. It is fundamental that such requirement is essential to the passing of title of·a present estate. Appellant's claim that she has the whole title is founded on such theory.

If a grantor employs words which have a definite legal significance in the law of real property, then it is presumed that the grantor intended that such technical words should be given their special significance. The word "heirs" is a technical word, clothed in the law of real property with a special significance. At common law, to create an estate of inheritance it was necessary that the grant or donation contain the word "heirs." If such word was omitted and the grant was to A, then A took only a life estate. (*Sauls* v. *Cox*, 394 Ill. 81; Blackstone's Commentaries, Book 2, page 108.) This rule applied to estates tail as well as to estates of general inheritance. To create an estate tail there was the additional requirement that there must be words of procreation, that is to say, words indicating the body out of which the heirs were to issue or by whom they were to be begotten. *Lehndorf* v. *Cope*, 122 Ill. 317.

There is no doubt that at common law the meaning that would have been attached to the words "Max S. Bibo and his bodily heirs" was that an estate tail was created. The words "and his bodily heirs" were at common law the simplest way of creating estates tail. In many cases where the words "the heirs of his body" or "his bodily heirs" have been used, it has been held that an estate tail was created.

*Sauls* v. *Cox,* 394 Ill. 81; *Hickox* v. *Klaholt,* 291 Ill. 544; *Coogan* v. *Jones,* 278 Ill. 279; *Moore* v. *Reddel,* 259 Ill. 36; *Metzen* v. *Schopp,* 202 Ill. 275; *Kyner* v. *Boll,* 182 Ill. 171; *Welliver* v. *Jones,* 166 Ill. 80; *Lehndorf* v. *Cope,* 122 Ill. 317; *Frazer* v. *Board of Supervisors,* 74 Ill. 282; *Blair* v. *Vanblarcum,* 71 Ill. 290; *Butler* v. *Huestis,* 68 Ill. 594.

In support of the contention that the words "his bodily heirs" are descriptive of the persons to take, appellant contends that this court has adopted the doctrine that such words, standing alone, are *prima facie* words of purchase. If such were the rule, the grant to Max S. Bibo and his bodily heirs would be presumed to have been used as descriptive of the persons to take. Such contention does not find support in the law. It is fundamental that courts favor constructions which vest estates at the earliest moment and there are statements in the books that estates tail are not favored in the law. The legislative policy of this State, as evidenced by section 6, was to abolish estates tail as they were known at the common law, but it will be observed that the application of section 6 depends on whether an estate has been created which would, at common law, have been an estate tail. To say that courts disfavor a construction which finds an estate tail has been created is, in effect, to say that courts are averse to finding the estate upon which section 6 depends for its application.

Appellant cites *Hauser* v. *Power,* 356 Ill. 521, and *Albers* v. *Donovan,* 371 Ill. 458, and refers to language in the opinions which, when separated from the context, tends to support her contention. The part of the opinion in the *Hauser case* to which appellant refers and which is repeated in the *Donovan case* is: "Under present day conditions, with estates tail abolished and no longer capable of creation under our statute, the tendency is to consider the words 'heirs of the body' and to construe them, *prima facie* at least, as words of purchase rather than as words

of limitation." It will be noted that in each of the cases language was found in the context which indicated that the words to be construed were intended to be used in a sense different from their special legal significance. In referring to the word "heirs" and the meaning to be given to it, it was said, in the *Hauser case*, "If there is no context, 'heirs' must be held to indicate the indefinite succession by inheritance."

In *Bunn* v. *Butler*, 300 Ill. 269, where the court was construing a will and giving effect to the words "heirs of the body," it was said: "We have repeatedly held that the words 'heirs of the body' are often used in a will as words of purchase, when it is clear from the context of the will that the words describe the takers and not the estate to be taken." This is a correct statement of the rule. (*Butler* v. *Huestis*, 68 Ill. 594; *Aetna Life Ins. Co.* v. *Hoppin*, 249 Ill. 406.) Before the court may reject the special meaning which interpretation and long usage has given to certain technical words, it must appear from the context that the grantor or donor intended that the words should be given a different meaning.

In *Griswold* v. *Hicks*, 132 Ill. 494, the court was considering when it was proper to reject the legal effect of technical words, and, in quoting from Lord Denman in *Doe* v. *Gallini*, 5 B. & Ad. 621, said: "Technical words, or words of known legal import, must have their legal effect, even though the testator uses inconsistent words, unless these inconsistent words are of such a nature as to make it perfectly clear that the testator did not mean to use the technical words in their proper sense."

Appellant contends that this case is controlled by *Duffield* v. *Duffield*, 268 Ill. 29. In that case the deed described the grantee as "Henry T. Duffield and the heirs of his body." The grant was to the said grantee. The deed contained other provisions imposing conditions on the grantee to pay the grantor at certain times a fixed amount of

money. It provided that upon the grantor's death the grant should "become an unconditional and absolute conveyance." The holding was that it appeared from the whole instrument that the grantor did not use the words "Henry T. Duffield and the heirs of his body grantee" in their technical legal sense but that he intended to grant a present estate, and there being no heirs of the body, the grantee Henry T. Duffield took the whole estate. The *Duffield case* and the instant case are distinguishable, in that there is nothing in the context of the deeds that indicates that Philip Bibo intended that the words "Max S. Bibo and his bodily heirs" should be given a meaning different from what they are generally understood to mean in the law of real property.

Appellant refers to sections 8, 9 and 13 of the Conveyance Act and argues that said sections indicate a legislative policy which should be given consideration in the construction of deeds involving estates tail. Sections 7 and 8 prescribe the covenants imposed upon a grantor when he uses the particular words of the statute. In no sense do they create estates or limit estates conveyed. Section 13 is that, "Every estate in lands which shall be granted, conveyed or devised, although other words heretofore necessary to transfer an estate of inheritance be not added, shall be deemed a fee simple estate of inheritance, if a less estate be not limited by express words, or do not appear to have been granted, conveyed or devised by construction or operation of law."

In *Lehndorf* v. *Cope,* 122 Ill. 317, it was contended that, under section 13, the words following the grant to the first taker should be rejected and read as if to the first taker only. The words of the deed under consideration in that case were to "Maria Anna Lehndorf and her heirs by her present husband Henry Lehndorf." It was held that the purpose of the statute was to change the rule of the common law whereby if a conveyance was made with-

out words of inheritance an estate for the life of the grantee only was created and that it had no application to the facts in that case. It will be noted that the provisions of the statute which obviated the necessity of having certain words in a deed to make it a deed of inheritance do not apply if the words of the deed expressly limit a less estate or it is found by construction or operation of law that a lesser estate has been granted, conveyed or devised. The sections of the statute referred to have no bearing on the question presented.

Appellant contends that the words "his bodily heirs of the city of Paris" are to be construed together and that by such construction there is a geographical limitation upon who are the bodily heirs that may take. The words "city of Paris, county of Edgar and state of Illinois" refer to the residence of Max S. Bibo, and are not words limiting the class that would be included in the words "his bodily heirs."

The deeds conveyed to Max S. Bibo estates in fee tail, which by the operation of section 6 of the Conveyance Act were converted into life estates with remainders to the heirs of his body. There being no heirs of the body of Max S. Bibo in existence at the time of the making of the deeds, the vesting of the remainders was contingent upon there being bodily heirs of such grantee. In Kales on Estates and Future Interests, (2d ed.) sec. 24, it is said: "Whenever one seized in fee created out of his fee a lesser estate of freehold—as an estate tail, or a life estate—after the expiration of the less estate, the owner in fee would have the fee which he had not wholly parted with. The less estate is called the *particular estate,* and what is left in the owner in fee is called, during the continuance of the particular estate, the *reversion.*" Thus a reversion arises by operation of law, and Philip Bibo held such reversionary interest to the time of his death. If he had died intestate and without having disposed of the same by

deed, such interest would, upon his death, have reverted to his heirs-at-law. But he was the first reversioner in order of time and could dispose of it by deed or will. (*Carter* v. *Lewis*, 364 Ill. 434; *Fisher* v. *Easton*, 299 Ill. 293; *Biggerstaff* v. *VanPelt*, 207 Ill. 611; *Akers* v. *Clark*, 184 Ill. 136.) Having devised all his property, both real and personal, to Elizabeth Bibo, she became the owner of the fee absolute when Max S. Bibo died without having had bodily heirs.

A question presented in the trial court involved the matter of rents, issues and profits from the land, but it appears that a part of that controversy was settled by stipulation. In view of such stipulation and the conclusion reached as to the ownership of the land, the questions as to rent need not be further considered.

The appellant further argues that Elizabeth Bibo, by joining with the heirs-at-law of Philip Bibo as parties plaintiff and praying in the alternative that they be held to be the owners of the fee title to the properties, placed a practical construction on the will of Philip Bibo as not devising to her the properties and that she would be bound by that construction. The doctrine of practical construction applies only to ambiguous wills, and there is no ambiguity in the will of Philip Bibo stating: "I devise and bequeath all my estate and property of whatsoever kind and nature, both real and personal, to which I am entitled or which I may have the power to dispose of at my death to my wife, Elizabeth Bibo, absolutely." The trial court correctly held that these reversions passed under the will of Philip Bibo to his wife and devisee, Elizabeth Bibo, and not as intestate property.

The decree of the circuit court is correct and is affirmed.

*Decree affirmed.*