(No. 30432.

EMILY R. GRIDLEY *et al.*, Appellees, *vs.* ASAHEL M. GRID-
LEY *et al.*, Appellants.

*Opinion filed January 22, 1948.*

216

WILLIAM R. BACH, WILLIAM J. BACH, and COSTIGAN, WOLLRAB & YODER, all of Bloomington, for appellants.

DUNN & DUNN, and EDWARD BARRY, JR., both of Bloomington, for appellees Emily R. Gridley *et al.*

GEORGE F. BARRETT, Attorney General, of Springfield, and STONE & STONE, and WHEDON SLATER, both of Bloomington, for other appellees.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

A decree entered by the circuit court of McLean County construed the last will and testament of Asahel Gridley, deceased, and ordered partition of the real estate described in the thirteenth clause thereof.

Asahel Gridley died testate January 25, 1881, leaving surviving a widow, Mary A. E. Gridley, and four children, Albert W. Gridley, Edward B. Gridley, Juliet Schonrock and Mary Gridley Bell, who were his only heirs-at-law. September 11, 1880, he executed his last will and testa-

ment and on October 15, 1880, he executed a codicil to his will.

By his will he gave his wife a substantial amount of real and personal property in fee simple. He also devised to her a life estate in other real property and provided that at her death the same should descend and vest in such of the heirs of his body as were then living, to be held by them in the shares and proportions provided by the laws of the State of Illinois then in force regulating the descent of real property.

By the thirteenth clause of his will he provided as follows:

"Thirteenth: I give and devise to Edward B. Gridley as trustee, and to my son in law Frederic A. Bell as co-trustee, as joint tenants and not as tenants in common, for the use and benefit of my daughter Mary, now Mrs. Mary Bell, during her natural life, the following land and tenements, towit: Two sections of land in said county of McLean being sections 19 and 30 in Township 24 North, Range 5 East being the two sections of land conveyed to me by William B. and Davis Henline.

Also lot 3 of Assessor's Subdivision of Lots 77, 78, 79 and 80 in James Allin's Addition to Bloomington, on which is a three story brick store now occupied by I. D. Smith and Co., as a boot and shoe store.

It shall be the duty of said trustees to keep said land and tenements well rented, to make reasonable repairs upon the same, to pay promptly all taxes and assessments thereon; to keep the buildings thereon reasonably insured against damage by fire; and to pay over all remaining rents and income into the hands of said Mary in person and not upon any written or verbal order, nor upon any assignment or transfer by the said Mary.

At the death of the said Mary such trust estate shall cease and be determined and the said lands shall vest in the heirs of the body of the said Mary, and in default of such heirs, shall descend to the heirs of my body then living, according to the laws of Illinois, then in force regulating descents."

By the tenth, eleventh and twelfth clauses of the will he made similar provisions for his other three children, using the same language used in the thirteenth clause, except as to the names of the trustees, the name of the

child and the description of the property. The codicil modified the residuary clause of the will by eliminating Juliet as one of the residuary legatees and devisees of the estate and directing that such estate vest in the testator's three children, Albert W., Edward B., and Mary, share and share alike.

The testator's son, Albert W. Gridley, died intestate, in 1895, leaving his son, Logan A. Gridley, his only descendant, and leaving a widow, who was the mother of Logan A. Gridley. The widow died December 12, 1924. Logan A. Gridley died testate February 21, 1931, leaving no descendants. He devised his estate to the First Trust & Savings Bank of Chicago, (now the First National Bank of Chicago,) as trustee, to hold one fourth for his mother, one half for his widow, Emily R. Gridley, and one fourth for his half-sister, Irene T. Hyde. His will provided that if either of the beneficiaries should predecease the testator, her share should be added to the shares of the survivor in equal parts, and each beneficiary surviving the testator was given the right by will to dispose of her share of the trust estate. Irene T. Hyde died March 6, 1939, leaving a will by which she devised her estate to the First National Bank of Chicago, as trustee for the benefit of Emily R. Gridley.

Edward B. Gridley died testate January 7, 1914, leaving no descendants and devising his entire estate to John H. Wood, a friend. John H. Wood died testate May 20, 1923, leaving all his property to Carrie E. Wood, his widow. Carrie E. Wood died intestate February 2, 1939, leaving a first cousin, Camilla M. Shelper, her only heir-at-law.

Juliet Schonrock died September 29, 1930, without children or descendants.

Mary Gridley Bell died testate November 9, 1944, without children or descendants. She left a will and three codicils thereto, wherein she appointed the People's Bank

of Bloomington as executor and, after specific bequests, left the remainder of her property to said bank as trustee.

After the death of Mary Gridley Bell, the appellees, Emily R. Gridley and the First National Bank of Chicago, as trustee under the will of Logan A. Gridley, deceased, and also as trustee under the will of Irene T. Hyde, deceased, filed this suit for partition of the lands in controversy and for a construction of the wills of Asahel Gridley, Logan A. Gridley and Irene T. Hyde. Their amended and supplemental complaint set forth the facts above stated and charged that the thirteenth clause of the will of Asahel Gridley created a life estate in trust for the life of Mary Gridley Bell with remainder at her death to the heirs of her body and in default of such heirs, to the heirs of the testator's body then living, that both of these remainders were contingent during the life of Mary Gridley Bell and at her death were defeated for lack of beneficiaries, that the reversion in fee not being disposed of by the thirteenth clause, passed under the residuary clause of the will, as modified by the codicil, and vested upon the testator's death in his three children, Albert W. Gridley, Edward B. Gridley and Mary Gridley Bell, and that their successors in title, upon the death of the life tenant, became seized of an indefeasible title in fee to said property, appellee the First National Bank of Chicago, as trustee under the will of Logan A. Gridley, deceased, being the owner of an undivided 5/24 part thereof, and as trustee under the will of Irene T. Hyde, deceased, being the owner of an undivided 3/24 part thereof, appellee Camilla M. Shelper being the owner of an undivided 8/24 part thereof, and appellee People's Bank of Bloomington, as executor of the will of Mary Gridley Bell, deceased, being the owner of an undivided 8/24 thereof.

Appellants are the descendants of the brothers and sisters of the testator, Asahel Gridley. They were made defendants and appeared and filed answers and counterclaims,

asserting that they are the sole heirs of the testator living at the death of Mary Gridley Bell, and as such heirs they became the owners in fee simple of said real estate upon the death of Mary Gridley Bell, by reason of the failure of issue of both Mary Gridley Bell and Asahel Gridley. The chancellor, on hearing, dismissed appellants' counterclaims for want of equity and entered a decree for partition in conformity with the prayer of appellees' amended and supplemental complaint.

It is claimed by appellants on this appeal that the testator did not use the words "heirs of my body" in the thirteenth clause of his will in their literal sense, but that it was his intention by the thirteenth clause of his will, as plainly indicated upon a proper construction of the will as a whole, to limit to his heirs generally the contingent remainder created to come into possession upon the death of Mary Gridley Bell without heirs of her body. This construction of the will was not advanced by appellants in the court below, and for that reason appellees claim that appellants are not entitled to have the will so construed by this court. However, both appellants and appellees, in their respective pleadings, have asked the court to construe the will of Asahel Gridley, deceased, and it is therefore the duty of the court to construe the will in such manner as may be found to be correct and proper notwithstanding the construction contended for by either party. If a correct and proper construction of the will requires the thirteenth clause thereof to be read as though the testator had used the words "my heirs generally" instead of the words "the heirs of my body," then it is the duty of this court to give to the will this construction. A court in construing a will is not limited to the constructions contended for in the pleadings. *Jackman* v. *Kasper,* 393 Ill. 496; *Smith* v. *Burt,* 388 Ill. 162.

The object in construing a will is to determine the testator's intention and follow it as ascertained, unless con-

trary to some settled rule of law. It must be conceded, as appellants contend, that in ascertaining the testator's intention the will as a whole and every provision thereof must be considered in the light of the surrounding circumstances at the time of its execution. However, the intention which is to be sought for is not what may by inference be presumed to have been in the mind of the testator, but that which is expressed by the language of the will. (*Ryan* v. *Beshk*, 339 Ill. 45.) The intention of the testator, when clearly expressed, must be given effect in preference to any surmise that he did not mean what he said or intended what he said to mean something else. (*Bartlett* v. *Mutual Benefit Life Ins. Co.* 358 Ill. 452; *Heitzig* v. *Goetten*, 347 Ill. 619; *Foss* v. *State Bank and Trust Co.* 343 Ill. 94.) When a testator in expressing his intention uses clear and unequivocal language, the meaning of which is plain and unambiguous, and there are not extrinsic circumstances raising any latent ambiguity in the will, there is no room for construction. If there is no ambiguity or uncertainty in the will there is no occasion for judicial interpretation. The intention of the testator being apparent, there is no need for the court to search for it.

The language in the thirteenth clause of the will which it is contended is ambiguous and requires construction is the phrase "heirs of my body." It is contended that the context of the will shows that the testator in using these words clearly intended to refer to his heirs generally. The word "heirs" is a technical word having a definite legal signification as designating the persons appointed by law to succeed to intestate estate. The words "heirs of the body" have a technical legal meaning as a limited class of heirs restricted to lineal descendants. The term "bodily heirs" and the term "heirs of the body" are synonymous and are always construed as having the same meaning. (*Turner* v.

*Hause,* 199 Ill. 464.) Such terms have a technical, legal meaning as a limited class of heirs, and when used by a testator are to be given that meaning when there are no words in the will which in any way limit or qualify them. (*Hull* v. *Hull,* 286 Ill. 75.) In the words of Lord Denham, cited and approved by this court in *Griswold* v. *Hicks,* 132 Ill. 494, and again in the recent case of *Bibo* v. *Bibo,* 397 Ill. 505: "Technical words, or words of known legal import, must have their legal effect, even though the testator uses inconsistent words, unless these inconsistent words are of such a nature as to make it perfectly clear that the testator did not mean to use the technical words in their proper sense." When unexplained and uncontrolled by the context they are to be interpreted according to their technical meaning. In determining intent technical words employed by the testator are presumed to be used according to their technical meaning and will be given that meaning unless it clearly appears that they are not used in that sense. (*Martin* v. *Casner,* 383 Ill. 260.) It is also a familiar rule of construction that words used in one part of a will must be understood in the same sense when used elsewhere in the same instrument, unless something in the context makes a different meaning imperative. (*Potter* v. *Potter,* 306 Ill. 37.) In the same sentence in which the testator used the words "heirs of my body" which are the subject of contention in this case, he also used the words "heirs of the body of the said Mary." Appellants do not claim that he meant by this last-quoted phrase the heirs generally of his daughter Mary, and it would be inconsistent to hold that in specifying the heirs of her body he used the term accurately according to its accepted legal meaning, but in referring to the heirs of his body in the same sentence he was glaringly inaccurate in the use of the term. Any construction which would give different meanings to the same words in the same sentence could

only be tolerated where from the context, it is evident that the testator did not use the same words both times in the same sense.

Appellants contend that it appears from the language in the thirteenth clause—"shall descend to the heirs of my body then living, according to the laws of Illinois, then in force regulating descents"—that the testator intended that at the death of Mary Gridley Bell without heirs of the body surviving, then the remainder should pass to such persons as would then have been the heirs-at-law of the testator under the statute. They argue that inasmuch as there was not at the time of the execution of the will and has never been any statute of the State of Illinois providing for descent to heirs of the body, the testator must undoubtedly have intended descent to his heirs generally, since that was the only kind of a statute existing. This argument is well answered by calling attention to the fact that while the statute of descent does not refer in express terms to heirs of the body, neither does it refer in express terms to heirs generally. The statute has always made provision for the descent of property to children and descendants of deceased children. They, of course, are lineal descendants and, as such, heirs of the body. The testator's reference to the laws of Illinois regulating descent was manifestly not intended to enlarge the settled legal meaning of the words "heirs of my body" to include collaterals, but indicated the quantum of the estate to go to such heirs rather than those who should take. *Johnston* v. *Herrin,* 383 Ill. 598.

Appellants cite *Baulos* v. *Ash,* 19 Ill. 187, *Cooper* v. *Cooper,* 76 Ill. 57, *Duffield* v. *Duffield,* 268 Ill. 29, and *Albers* v. *Donovan,* 371 Ill. 458, in support of their contention that the words "the heirs of my body then living" as used in the thirteenth clause of the will should be construed as limiting a remainder to the heirs generally of the testator. None of these cases aids the appellants. They

announce the principle that where no words of procreation appear in the granting clause, which is the part of the deed operative to convey the estate, such words in the *habendum* or in the description of the grantee cannot control the operation of the grant and the further principle that the grant of a present estate in possession to the heirs of the body of a living person is inoperative and void. In the last-cited case the words the "heirs born of her body" were construed as meaning "children born of her body;" but counsel have cited no case, and upon diligent search we find none, construing the words "heirs of the body" to mean heirs generally. None of the above cases are of any assistance in construing the words "heirs of my body" used by the testator in this case.

Appellants' further contention is that no reversionary estate or other interest in the property here involved was included within the residuary clause of the will, and therefore, even though the alternate remainder created in clause 13 of the will was limited to those in line of lineal descent from the testator, nevertheless the trustee upon the expiration of the life estate would hold the legal title for the benefit of the then living heirs of the testator. They claim that the devise of the legal estate to the trustees and the devise of the equitable life estate to Mary Gridley Bell completely exhausted the title and left no undisposed of reversionary interest to pass by the residuary clause of the will. They further argue that the testator by creating a spendthrift trust for the life beneficiary, Mary Gridley Bell, plainly manifested his intention to exclude her from taking any interest in the property which she could transfer by deed or will.

If an estate is devised to a trustee, the trustee will take only so much of the legal estate as the purposes of the trust require. He will in such case, or even if there be no formal devise, acquire an estate commensurate with the powers conferred and the purposes to be accomplished. If

the fee is required it will be taken, and if the trustee will be enabled to execute the trust with a less estate, that alone will vest in him. If a trustee is required to collect and pay the rents of property for a definite period, he will take an estate for years. If he is charged with such duties for the life of an individual, he will take an estate for the life of that person, and if his duties are of indefinite duration he will take the fee. *Harvey* v. *Ballard*, 252 Ill. 57.

In this case the devise to the trustees was "for the use and benefit of my daughter Mary, now Mrs. Mary Bell, during her natural life," and it was provided that "at the death of the said Mary such trust estate shall cease and be determined." There was no direction for a conveyance by the trustees upon the expiration of the trust, but the will provided that the fee should vest in the contingent remaindermen without the aid of a conveyance, upon the death of the life tenant. The duties of the trustees were to rent the property, keep it in repair, pay the taxes and assessments, keep the buildings insured, and pay all remaining rents and income into the hands of the life tenant in person. These duties were to terminate with the death of the life tenant and the trustees were given no power and charged with no duty thereafter. The legal estate devised to the trustees was not an estate in fee, but was a life estate for the life of Mary Gridley Bell. *Beal* v. *Higgins,* 303 Ill. 370; *Harvey* v. *Ballard*, 252 Ill. 57.

The thirteenth clause of the will created two estates in remainder, one in the heirs of the body of the life tenant and the other in the heirs of the body of the testator. Remainders of this character in which the disposition of the property is made in the alternative, the second to take effect only in case the first does not and in substitution for it, are said to run concurrently, and are commonly denominated alternative remainders or contingent remainders with a double aspect. (*Riddle* v. *Killian,* 366 Ill. 294; *Friedman* v. *Friedman,* 283 Ill. 383.) After the creation of the

life estate and the alternative contingent remainders, there still remained undisposed of by the thirteenth clause of the will the reversion in fee created by operation of law. (*Fisher* v. *Easton,* 299 Ill. 293.) Until the vesting of the contingent remainder, or the determination of the impossibility of its vesting, the reversion in fee must rest either in the testator's heirs by descent, or in his devisees under the terms of his will. It is a vested interest and capable of being transferred by deed or will of the heirs or devisees. (*Fisher* v. *Easton,* 299 Ill. 293.) It will pass by a residuary clause in the will unless there is something in the circumstances of the devise to exclude the fee therefrom. *Matthews* v. *Andrews,* 290 Ill. 103.

Appellants cite *Parish* v. *Dewey,* 298 Ill. 345, and other cases where it was held that the reversion in fee was not included in the residuary clause. In those cases the residuary estate was placed in trust with directions as to the disposition of the income therefrom, or the devise of the residuary estate was for the purpose of converting the same into money. Those cases can have no application here. Neither do cases cited as to the disposition of lapsed legacies or the disposition of a lapsed devise have any bearing on the question here. The reversion arising by operation of law after a contingent remainder is not analogous to a lapsed devise.

The presumption obtains that a testator intends the residuary clause to include that portion of his estate not otherwise devised or disposed of, and it should be so construed as to prevent intestacy as to any part of the testator's estate unless there is an apparent intention that the property should be excluded from the will. (*Carter* v. *Lewis,* 364 Ill. 434.) The fact that Mary Gridley Bell was devised an equitable life estate, in the form of a spendthrift trust, or the fact that the testator created other spendthrift trusts for his other children does not indicate that when, by the twentieth clause of his will, he devised

and bequeathed "all the rest and remainder of my estate not herein disposed of," he intended to exclude therefrom the undisposed of reversion in fee of the property described in the thirteenth clause of his will. It would appear from a consideration of the provisions of the entire will that the sole purpose of the testator in creating spendthrift trusts for each of his children was to assure each child an income during life sufficient for their welfare and comfort, and that he did not intend thereby to modify the operation and legal effect of his residuary devise. It is neither inconsistent nor absurd for a testator to give to a life tenant an interest in fee in the remainder. (*Hartwick* v. *Heberling,* 364 Ill. 523.) If a specific devise includes only a partial or a contingent interest, or if an estate in fee is devised specifically but is to take effect only on the happening of some contingent event, the reversion will pass by a residuary clause in the same will although the devisee of the partial or contingent interest is also the residuary devisee. (*Williams* v. *Ivie,* 371 Ill. 355; *Hartwick* v. *Heberling,* 364 Ill. 523; *Ryan* v. *Beshk,* 339 Ill. 45; *Fisher* v. *Easton,* 299 Ill. 293; *Friedman* v. *Friedman,* 283 Ill. 383.) The reason for the rule is that the testator intends the residuary clause to include that portion of his estate which is not absolutely devised specifically. If the devise is conditional and the condition does not occur, he intends the residuary clause to include the entire fee. Since he provided specifically for its devolution if the condition occurred, it is presumed he intended it to pass by the residuary clause if the condition failed. *Williams* v. *Ivie,* 371 Ill. 355.

Appellants' argument that the testator did not intend the property to pass into the hands of persons unrelated to him upon the death of his daughter, Mary Gridley Bell, is not persuasive. We have no way of knowing the testator's intentions or preferences except as he has expressed them in his will. We know from the will that he provided that the remainder in fee upon the death of Mary Gridley Bell

should vest in the heirs of her body, and in default of such heirs then in the heirs of the testator's body, and that he created a residuary clause to dispose of the property not otherwise disposed of in the will. We discover nothing in the will or in any of its provisions which indicates he intended that the general and applicable rules of law in regard to the descent of property should be disregarded in interpreting the instrument. The testator may not have contemplated that upon the death of Mary Gridley Bell there would be a complete failure of heirs of his body, but that fact would not authorize an alteration of the will or override the clearly expressed intention of the testator to devise to his three children, Albert, Mary and Edward, all the rest and remainder of his estate not otherwise disposed of in his will. The construction of a will is not made to depend upon subsequent facts or conditions arising after the will took effect. (*Harvey* v. *Ballard,* 252 Ill. 57.) The courts cannot found a construction of a will on conjecture, but must take the language of the will as they find it. When a condition has arisen in regard to a testator's estate which he had not taken into consideration and which he would probably have provided for if he had thought of it when making his will, the court cannot conjecture what provision he would have made unless that provision is contained in the words he has used in making his will. (*First Trust and Savings Bank* v. *Olson,* 353 Ill. 206.) The intention of the testator is not to be deduced from speculation as to what he would have done had he anticipated a change in the circumstances surrounding him at the time of the execution of the will, since this would amount to making a will for him and not to interpreting the will he has made.

It follows from what we have said that the decree of the circuit court was correct and should be affirmed.

*Decree affirmed.*