**In re Guy Robert Detlefsen, Bankrupt.**

**J. J. MICKELSON, Trustee, Plaintiff,**

v.

**Guy Robert DETLEFSEN and Paine, Webber, Jackson and Curtis, Defendants.**

No. Civ. 4–78–364.

United States District Court,
D. Minnesota,
Fourth Division.

Jan. 30, 1979.

Steven B. Nosek, Minneapolis, Minn., for plaintiff.

Melvin I. Orenstein, Robert J. Hartman, Minneapolis, Minn., for defendants.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

The trustee in bankruptcy, J. J. Mickelson, brought this action against the bankrupt, Guy Robert Detlefsen, and Paine, Webber, Jackson and Curtis (Paine Webber), seeking an order which would require Paine Webber to turn over cash and securities held in one of its accounts. The bankruptcy court granted summary judgment for the trustee, and the bankrupt appeals. This Court affirms.

The facts are uncomplicated and in relevant part uncontroverted. In 1966, Gustav C. Detlefsen executed a will which would establish a testamentary trust providing his wife Elsa income during her life. Upon her death, the principal of the trust, which was subject to a spendthrift restriction, was to be distributed to the living descendants of the settlor.[1] Gustav Detlefsen died on April 12, 1974, in Chicago, predeceasing his wife. His will was probated in Illinois according to its terms.

On November 8, 1976, the bankrupt filed the voluntary petition for bankruptcy which underlies this proceeding. Elsa Detlefsen died the next month, on December 24, 1976, in Chicago. The bankrupt was then the sole living child of the testator and entitled to the trust principal. On June 14, 1977, some seven months after the filing of his petition, the bankrupt filed in an Illinois court a disclaimer of his interest in the trust created under his father's will.[2] It is uncontroverted that the disclaimer comported with Illinois law. See, Ill.Stat.Ann. ch. 3, §§ 15b–d, as amended, Ill.Stat.Ann. ch. 110½, § 2–7. If the disclaimer is effective, the bankrupt's children, and not the creditors, will receive the principal of the trust, now held in Account No. LO–83269 by Paine Webber.

The question raised by this appeal involves the interplay of state and federal law. The bankrupt argues that under Illinois probate law his disclaimer prevented title in the trust proceeds from devolving to him and, therefore, to the trustee in bankruptcy. Consequently, the trustee has no legitimate claim to the principal of the trust. The trustee argues, and the bankruptcy court held, that under the Bankruptcy Act title to the trust proceeds and the power to disclaim passed on the death of the life tenant to the trustee, thereby precluding disclaimer by the bankrupt.

The law of the states plays an integral role in bankruptcy proceedings. In section 6 of the Bankruptcy Act, 11 U.S.C. § 24, for example, Congress grants the bankrupt the exemptions permitted by state law. More relevant, state law helps define the property of the bankrupt transferred by operation of law to the trustee in bankruptcy. See, Bankruptcy Act § 70, 11 U.S.C. § 110; *In re*

---

1. Section 5.4 of the will of Gustav C. Detlefsen provides in part: "The interests of the beneficiaries in principal or income shall not be subject to the claims of their creditors or others and may not be transferred or encumbered." This spendthrift restriction applies to the trust in question, the "Family Trust," established in article 4 of the will. Termination of the Family Trust and distribution of the trust proceeds is to occur in the manner prescribed in section 4.3

of the will: "On the death of my wife, Elsa L. Detlefsen, or on my death if she predeceases me, the principal of the Family Trust shall be distributed per stirpes to my then living descendants."

2. The bankruptcy court assumed arguendo that the bankrupt exerted no other dominion or control over the trust principal. (Order of Bankruptcy Court, July 19, 1978, Ex. A, at 2)

*Gervich*, 570 F.2d 247 (8th Cir. 1978). But although state law thus plays an important definitional part in bankruptcy proceedings, it remains subordinate to the federal policies that inhere in the Bankruptcy Act.

Congress derives its power to enact a bankrupt law from the federal Constitution and the construction of it is a federal question. Of course, where the Bankrupt Law deals with property rights which are regulated by the state law, the federal courts in bankruptcy will follow the state courts; but when the language of Congress indicates a policy requiring a broader construction of the statute than the state decisions would give it, federal courts cannot be concluded by them.

*Board of Trade v. Johnson*, 264 U.S. 1, 10, 44 S.Ct. 232, 234, 68 L.Ed. 533 (1924). See, e. g., *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971); *In re Kanter*, 505 F.2d 228 (9th Cir. 1974).

A principal purpose of the Bankruptcy Act is to marshal the bankrupt's assets and distribute them ratably to creditors. See, *Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966); *In re Apollo Travel, Inc.*, 567 F.2d 841, 844 (8th Cir. 1977). This purpose is partly implemented by vesting the title of the bankrupt to various properties in the trustee in bankruptcy. Section 70a of the Bankruptcy Act provides in pertinent part:

> The trustee of the estate of a bankrupt and his successor or successors, if any, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt

as of the date of the filing of the petition initiating a proceeding under this title, except insofar as it is to property which is held to be exempt, to all of the following kinds of property wherever located . . . (5) property, including rights of action, which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered . . . .

> *All property, wherever located, except insofar as it is property which is held to be exempt, which vests in the bankrupt within six months after bankruptcy by bequest, devise or inheritance shall vest in the trustee and his successor or successors, if any, upon his or their appointment and qualification, as of the date when it vested in the bankrupt, and shall be free and discharged from any transfer made or suffered by the bankrupt after bankruptcy.*

11 U.S.C. § 110(a) (emphasis added). Section 70c provides the trustee in bankruptcy with the rights and powers of creditors as well.[3] The trustee is in effect an owner of the bankrupt's property and a creditor of the bankrupt.

As a creditor, the trustee in bankruptcy cannot reach the trust proceeds in question. A disclaimer is effective against creditors under Illinois law, *In re Hansen*, 109 Ill. App.2d 283, 248 N.E.2d 709, 712–13 (1969), and section 70c of the Bankruptcy Act explicitly places the trustee in the same position as other creditors. See, note 3 supra.

---

**3.** Section 70c of the Bankruptcy Act provides in part:

> The trustee shall have as of the date of bankruptcy the rights and powers of: (1) a creditor who obtained a judgment against the bankrupt upon the date of bankruptcy, whether or not such a creditor exists, (2) a creditor who upon the date of bankruptcy obtained an execution returned unsatisfied against the bankrupt, whether or not such a creditor exists, and (3) a creditor who upon the date of bankruptcy obtained a lien by legal or equitable proceedings upon all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt upon a simple contract could

have obtained such a lien, whether or not such a creditor exists. If a transfer is valid in part against creditors whose rights and powers are conferred upon the trustee under this subdivision, it shall be valid to a like extent against the trustee. In cases where repugnancy or inconsistency exists with reference to the rights and powers in this subdivision conferred, the trustee may elect which rights and powers to exercise with reference to a particular party, a particular remedy, or a particular transaction, without prejudice to his right to maintain a different position with reference to a different party, a different remedy, or a different transaction.

11 U.S.C. § 110(c).

The bankruptcy court relied instead on the status of the trustee as titleholder of the bankrupt's property in finding the bankrupt precluded from exercising the right to disclaim. In essence, the court held "that the bankruptcy itself operates as an assignment and that since the all inclusive bundle of rights passes to the trustee [under § 70a, ¶ 2 (quoted with emphasis at page 163 supra)], no right of renunciation is left in the bankrupt." (Order of Bankruptcy Court, July 19, 1978, Ex. A, at 6) While the Court does not adopt the precise rationale advanced by the bankruptcy court, it does concur in the thrust of the opinion below: it was the intent of Congress as embodied in § 70a, ¶ 2 to entitle the trustee in bankruptcy to the trust proceeds in question.

The trustee in bankruptcy succeeds to the title of particular property of the bankrupt only if the property falls within the confines of section 70a. Clause (5) of that section, which enables the trustee to reach property alienable by the bankrupt or leviable against him before the date of the filing of the bankruptcy petition (see, page 163 supra), might be thought applicable. But the trust in question contained a spendthrift restriction (see, note 1 supra), and, under Illinois law, a spendthrift restriction is valid and prevents property subject to the restriction from being alienated or subject to levy. E. g., *Wagner v. Wagner*, 244 Ill. 101, 91 N.E. 66 (1910). Clause (5), therefore, appears inapplicable. See, *In re Ahlswede*, 516 F.2d 784 (9th Cir.), *cert. denied*, 423 U.S. 913, 96 S.Ct. 218, 46 L.Ed.2d 142 (1975); *Allen v. Tate*, 6 F.2d 139 (8th Cir. 1925). Hence, the trustee's claim must stand or fall on the applicability of the second paragraph of section 70a.

Bequeathed property must "vest[ ] in the bankrupt within six months after bankruptcy" to permit the trustee to succeed to title under § 70a, ¶ 2. The bankrupt's interest in the trust proceeds was defined at the time of his mother's death, which was within two months of the date he filed for bankruptcy.[4] Under Illinois law, however, because of the disclaimer, the interest never vested in the bankrupt. A disclaimer has the effect of passing property as if the disclaimant had predeceased the testator:

> Unless the decedent or donee of the power has otherwise provided by will, the property or interest therein or part thereof disclaimed . . . shall descend or be distributed as if the disclaimant had predeceased the decedent, or if the disclaimant be one designated to take pursuant to a power of appointment exercised by a testamentary instrument, then as if the disclaimant had predeceased the donee of the power. *In every case the disclaimer shall relate back for all purposes to the date of death of the decedent or the donee, as the case may be.*

Ill.Stat.Ann. ch. 3, § 15d (emphasis added), as amended, Ill.Stat.Ann. ch. 110½, § 2–7(e). In relating back to the date of death of the decedent, the disclaimer prevents the disclaimed interest from ever vesting in the disclaimant. See, *People v. Flanagin*, 331 Ill. 203, 162 N.E. 848 (1928). Thus, *if state law applies*, the second paragraph of section 70a does not. See, *In re Dankner*, 86 Misc.2d 1081, 384 N.Y.S.2d 683 (Sur.Ct. 1976).

But permitting state law to provide definition of the language in § 70a, ¶ 2 unduly restricts operation of the section and circumscribes congressional intent. The paragraph in question, together with a following paragraph and clause (7) of section 70a,[5]

---

**4.** "Bankruptcy" occurs upon the filing of a voluntary petition. See, Bankruptcy Act § 1(13), 11 U.S.C. § 1(13).

**5.** Clause (7) and the third paragraph of section 70a provide:

> The trustee of the estate of a bankrupt and his successor or successors, if any, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this title, except insofar as it is to property which is held to be exempt, to all of the following kinds of property wherever located . . . (7) contingent remainders, executory devises and limitations, rights of entry for condition broken, rights or possibilities of reverter, and like interests in real property, which were nonassignable prior to

were enacted in 1938 to remedy an inequitable situation:

Prior to the 1938 Act, if a contingent interest was assignable under state law it passed to the trustee by virtue of § 70a(5). But where such interests were not assignable under state law, the bankrupt was enabled to divest himself of his debts through bankruptcy and yet possibly come into great wealth during the administration of his estate by virtue of the ripening of contingent or executory interests untouched by bankruptcy. Moreover, liberal credits were frequently extended by tradesmen in reliance upon expectancies and debtors frequently invoked the Act to escape payments. This was characterized as "virtually a fraud upon the act." Accordingly, clause (7) of § 70a now specifically includes various contingent and executory interests which within six months after bankruptcy become assignable interests or estates, or which give rise to powers in the bankrupt to acquire assignable interests or estates. The same theory prompted the insertion of the first two paragraphs following, but not a part of, clause (8) of § 70a. By virtue of these provisions legacies, bequests, devises, estates by the entirety which become transferable solely by the bankrupt, and similar interests acquired within six months subsequent to bankruptcy are brought within the purview of

§ 70. With regard to these changes it was said in the *Analysis of H. R.* 12889:

"To an extent this involves a departure from the strict theory of the date of cleavage, but the bankrupt ought not to get the benefit of all legal complications at the expense of creditors. The vesting of such property is usually independent of the bankrupt's economic efforts and has no relation to his normal budget, so the usual reasons assigned for leaving him his after-acquired property do not apply."

4 Colliers on Bankruptcy ¶ 70.03, at 37–38 (14th ed. 1978) (footnotes omitted).

The bankrupt contends that disclaimers as authorized by state law mesh with the policies of the Bankruptcy Act. He argues that no proof exists that his creditors in extending credit relied on his expectancy in the trust. Given the spendthrift restriction, such reliance, if it did exist, would be unreasonable. The absence of reliance, however, does not inexorably align Illinois and federal law. The bankrupt argues that no federal policy is frustrated because the disclaimer prevents him as well as his creditors from receiving the trust proceeds. But the argument ignores the exercise of choice by the bankrupt as to the proper recipient of his windfall: whether the windfall of bequest should devolve to the bankrupt's creditors or the beneficiaries of his disclaimer.[6]

bankruptcy and which, within six months thereafter, become assignable interests or estates or give rise to powers in the bankrupt to acquire assignable interests or estates.

. . . . .

All property, wherever located, except insofar as it is property which is held to be exempt, in which the bankrupt has at the date of bankruptcy an estate or interest by the entirety and which within six months after bankruptcy becomes transferable in whole or in part solely by the bankrupt shall, to the extent it becomes so transferable, vest in the trustee and his successor or successors, if any, upon his or their appointment and qualification, as of the date of bankruptcy.

11 U.S.C. § 110(a)(7), ¶ 2.

**6.** In New York, the Bennett Commission on Estates, Report of the Temporary Commission on Estates, Rep. No. 1.6B, N.Y.Leg.Doc. No. 19, at 259–60 (1963), posed the issue as follows:

Of course, it is possible to reach the conclusion that creditors should be able to set aside any renunciation that constitutes a fraud on their rights. This calls for a re-evaluation of the preferred position of the legatee. Should he be compelled to accept a gift in order that his creditors may have their claims satisfied? The legacy is a windfall for the creditors except in the case where they extended credit in reliance on the legatee's expectancy. If the *probable intent of the testator* is to be considered at all, it is unlikely that he should have insisted on paying off the legatee's debts over the latter's protests. Since he is no longer in a position to withdraw his gift, it may be reasonable to let the other party to the transaction, the legatee, make the choice. On the other hand, the testator's death gives the legatee such complete control over the property included in his legacy that it is hard to distinguish him from an owner. It is tempting to make him

Congress, in enacting the second paragraph of section 70a, has asserted its prerogative and taken the choice from the bankrupt. If the windfall occurs within six months of bankruptcy, it is within reach of the trustee. If the windfall occurs more than six months after bankruptcy, it is beyond the trustee's reach.

To permit the bankrupt to exercise the choice made available by state law would render the second paragraph of section 70a largely nugatory. The common law recognized the right of a testamentary beneficiary to disclaim his inheritance, and some statutes grant an heir an equivalent right. See, Uniform Probate Code, § 2–801, Comment, 8 Uniform Laws Ann. 366 & Supp. The prevailing view is that an obligor may disclaim, notwithstanding the wishes of his creditors. Annot., 133 A.L.R. 1428; 80 Am. Jur.2d *Wills* § 1598. Contra, e. g., *In re Kalt*, 16 Cal.2d 807, 108 P.2d 401 (1941). See also, Note, 43 Yale L.J. 1030 (1934). Thus, the law in a number of states would permit individuals who have filed for bankruptcy to divert legacies from creditors to persons with whom the bankrupt is usually

on more amiable terms.[7] The supremacy clause requires that such laws yield to apparent congressional intent.

In the instant case, the bankrupt's interest in the trust proceeds became fixed and determined at the time of his mother's death. Vesting under § 70a, ¶ 2 of the Bankruptcy Act requires no more than that an interest become fixed and determined, see, *Thornton v. Scarborough*, 348 F.2d 17, 19 (5th Cir.), modified on other grounds, 349 F.2d 1023 (5th Cir. 1965), Illinois law of disclaimers notwithstanding. As the bankrupt's interest is "property . . . vest[ing] in the bankrupt within six months after bankruptcy by bequest," it must "vest in the trustee . . . as of the date when it vested in the bankrupt." Bankruptcy Act § 70a, ¶ 2, 11 U.S.C. § 110(a), ¶ 2. The bankrupt's disclaimer of the interest is a "transfer made or suffered by the bankrupt after bankruptcy" from which the trustee's interest "shall be free and discharged." *Id.* Since the bankrupt's interest in the trust proceeds falls within the terms of § 70a, ¶ 2, the windfall must benefit the bankrupt's creditors.[8]

---

be just before he is generous. The windfall to his creditors may not be any less deserved than the fortuitous benefit accruing to the beneficiaries of his renunciation.

7. The Court does not mean to imply that exercise of the right to disclaim is immoral or illegal. Cf. *Keinath v. Comm'r of Internal Revenue*, 480 F.2d 57, 66 (8th Cir. 1973); Int.Rev. Code § 2518. It is because exercise of the right is so predictable in this situation that congressional intent will be largely frustrated.

8. *In re Champion*, 5 Colliers Bkcy. Cases 645 (N.D.Ga. July 18, 1975), presents an alternative course to the same result. Instead of holding that exercise of a disclaimer conflicts with the Bankruptcy Act, the court in *Champion* relied on § 70a, ¶ 2 to find a transfer to the trustee of the property subject to renunciation, which transfer under Georgia law barred the right to renounce. This Court finds an analysis based on the supremacy of congressional intent more cogent, but it notes that the analysis advanced by the court in *Champion* is applicable here as well.

In *Champion*, the bankrupt filed a voluntary petition for bankruptcy nine days before his father died, leaving a will which devised an interest in real property to the bankrupt. Exercising his rights under Georgia law, the bankrupt renounced his interest in the devised prop-

erty. The trustee in bankruptcy sought a turnover order requiring the bankrupt to convey the interest. The bankruptcy court issued such an order and the United States District Court for the Northern District of Georgia affirmed on appeal.

The district court found under Georgia law that the bankrupt was vested with an equitable interest in the devised property upon his father's death. The equitable interest vested in the bankrupt transferred by operation of law to the trustee under section 70a, ¶ 2. The transfer barred the bankrupt from later exercising his right to renounce: "Any assignment, conveyance, encumbrance, pledge or transfer of property . . . made before the expiration of the period in which he is permitted to renounce, bars the right to renounce as to the property." Ga.Code Ann. § 113–824(d)(1). Because the bankrupt was barred from renouncing, the fact that an otherwise valid renunciation would relate back to the date of the death of the testator and thus prevent vesting of the interest, see, Ga.Code Ann. § 113–824(c), was immaterial. The court also noted that "to permit a 'renunciation' under the present circumstances would be against the overriding policy of the Bankruptcy Act." *In re Champion*, 5 Colliers Bkcy. Cases 645, 652 (N.D.Ga. July 18, 1975).

For the reasons advanced above, IT IS ORDERED that the order of the bankruptcy court granting summary judgment for the trustee in bankruptcy be and hereby is affirmed.

Illinois law appears to parallel the state law relied on by the court in *Champion.* Absent consideration of the relation back of the disclaimer, it cannot be denied that under Illinois law the bankrupt received an alienable interest in the trust proceeds when the interest vested at the time of his mother's death. *Friedman v. Friedman,* 283 Ill. 383, 119 N.E. 321 (1918); *Lisner v. Chicago Title & Trust Co.,* 439 F.Supp. 1242 (S.D.Ill.1977); see, *In re Landis,* 41 F.2d 700 (7th Cir.), *cert. denied,* 282 U.S. 872, 51 S.Ct. 77, 75 L.Ed. 770 (1930). Section 70a, ¶ 2 of the Bankruptcy Act caused this interest to be transferred to the trustee in bankruptcy as of that date. Illinois law at the time provided: "Any . . . assignment or transfer of or contract to assign or transfer personal property . . . by [a] . . . legatee . . . ., made before the expiration of the period in which he may disclaim . . ., bars the right to disclaim as to the property . . . ." Ill.Rev.Stat. ch. 3, § 15d, as amended, Ill.Rev. Stat. ch. 110½, § 2–7(f). The transfer by operation of law to the trustee in bankruptcy thus may be said to preclude the bankrupt from disclaiming.

The Court finds the *Champion* analysis somewhat unsatisfactory because, for all its reliance on state law, it ultimately appears to disregard the clear intent of that law. When state law permits an obligor to disclaim or renounce despite the objections of his creditors and further provides that the disclaimer or renunciation shall relate back for all purposes to the date of the death of the testator so that in effect no bequest ever vests in the obligor, it seems clear that the state's intent is to permit the disclaimer or renunciation, even if the obligor has become a bankrupt. Cf. *Hoecker v. United Bank,* 476 F.2d 838 (10th Cir. 1973). While the Court acknowledges the ingenuity of the analysis in *Champion,* it prefers to rest its holding on more straightforward grounds.